# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

————

**INNOVATION VENTURES, LLC,**
**d/b/a LIVING ESSENTIALS,**
a Michigan limited liability company,

*Plaintiff,*

vs.

**N2G DISTRIBUTING, INC.,**
a California corporation, and

**ALPHA PERFORMANCE LABS,**
a Nevada corporation,

*Defendants.*

Hon. **PAUL D. BORMAN**

**CIVIL ACTION NO. 2:08-CV-10983**

*JURY TRIAL DEMANDED*

_____

MARK A. CANTOR        (P32661)
MARC LORELLI         (P63156)
**BROOKS KUSHMAN P.C.**
1000 Town Center
Twenty-Second Floor
Southfield, Michigan  48075
(248) 358-4400

*Attorneys for Plaintiff*

# PLAINTIFF LIVING ESSENTIALS'
## MOTION FOR A TEMPORARY RESTRAINING ORDER
### AND A PRELIMINARY INJUNCTION



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

Pursuant to Rule 65 of the *Federal Rules of Civil Procedure*, Plaintiff Innovation Ventures, LLC d/b/a Living Essentials ("Living Essentials") respectfully moves the Court for the entry of a temporary restraining order and a preliminary injunction, enjoining Defendants N2G Distributing, Inc. and Alpha Performance Labs (collectively "Defendants"), their officers, employees, agents, successors and assigns, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunction, from:

(1)     imitating, copying, or making any unauthorized use of the 5 HOUR ENERGY® Trademark (attached as Exhibit A) and Packaging Trade Dress (attached as Exhibit B);

(2)     importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying Defendants' "6 Hour Energy" supplement illustrated in Exhibit C;

(3)     importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of either the 5 HOUR ENERGY® Trademark and Packaging Trade Dress;

(4)     using any simulation, reproduction, counterfeit, copy or colorable imitation of the 5 HOUR ENERGY® Trademark and Packaging Trade Dress in connection with the promotion, advertisement, internet promotion, display, sale, offer for sale, manufacture, production, circulation or distribution of any product or service;

(5)     using any false designation of origin or false description (including, without limitation, any letters, symbols, or designs constituting the 5 HOUR ENERGY® Trademark and



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel     (248) 358-4400
Fax     (248) 358-3351

-1-

Packaging Trade Dress) or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed or sold by Defendants are in any manner associated or connected with Living Essentials, the 5 HOUR ENERGY® brand, or the 5 HOUR ENERGY® Trademark and Packaging Trade Dress, or is sold, manufactured, licensed, sponsored, approved or authorized by Living Essentials.

The entry of a temporary restraining order and preliminary injunction against Defendants is necessary to prevent Living Essentials from continuing to be irreparably harmed by Defendants' unauthorized use of Living Essentials' 5 HOUR ENERGY® Trademark and Packaging Trade Dress.  Defendants have used and continue to use, as of the date of this Motion, Plaintiff's marks on Defendants' products and packaging, in their advertising, and on their internet websites.  These facts and evidence, which fully support Living Essentials' application for injunctive relief, are set forth more fully in Living Essentials' Brief In Support Of Its Motion For a Temporary Restraining Order and Preliminary Injunction, in the Complaint on file herein, and by the exhibits thereto.

This is not an *ex parte* request.  Living Essentials has provided notice to Defendants' counsel of this motion and has already discussed scheduling with the Court and with opposing counsel.  In these same efforts, counsel for Living Essentials has complied with L.R. 7.1 and has sought concurrence in the relief sought by this motion.  No concurrence was obtained.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

-2-

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

By:  /s/ Marc Lorelli
     MARK A. CANTOR    (P32661)
     MARC LORELLI  (P63156)
     1000 Town Center
     Twenty-Second Floor
     Southfield, Michigan 48075
     (248) 358-4400
     E-mail: mantor@brookskushman.com
            mlorelli@brookskushman.com

     *Attorneys for Plaintiff*

Dated:   March 13, 2008



Brooks Kushman P.C.
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that on March 13, 2008 , I electronically filed the foregoing **PLAINTIFF LIVING ESSENTIALS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT** with the Clerk of the Court for the Eastern District of Michigan using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing:

I also certify that I have mailed by United States Postal Service the paper to the following non-participants in the ECF System:

Daniel A. Reed
Varner & Brandt
3750 University Avenue
Suite 610
Riverside, California 92501

**BROOKS KUSHMAN P.C.**

By: /s/ Marc Lorelli
   MARK A. CANTOR        (P32661)
   MARC LORELLI          (P63156)
   1000 Town Center
   Twenty-Second Floor
   Southfield, Michigan  48075-1238
   Tel:        (248) 358-4400
   Fax:        (248) 358-3351
   E-mail: mcantor@brookskushman.com
              mlorelli@brookskushman.com

*Attorneys for Plaintiff*



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

————

**INNOVATION VENTURES, LLC,**
**d/b/a LIVING ESSENTIALS,**
a Michigan limited liability company,

       *Plaintiff,*

vs.

**N2G DISTRIBUTING, INC.,**
a California corporation, and

**ALPHA PERFORMANCE LABS**,
a Nevada corporation,

       *Defendants.*

Hon. PAUL D. BORMAN

CIVIL ACTION NO. 2:08-CV-10983

*JURY TRIAL DEMANDED*

———————————————————————————————————

MARK A. CANTOR     (P32661)
MARC LORELLI     (P63156)
**BROOKS KUSHMAN P.C.**
1000 Town Center
Twenty-Second Floor
Southfield, Michigan 48075
(248) 358-4400

     *Attorneys for Plaintiff*

**PLAINTIFF LIVING ESSENTIALS'**
**BRIEF IN SUPPORT OF ITS MOTION**
**FOR A TEMPORARY RESTRAINING**
**ORDER AND A PRELIMINARY INJUNCTION**



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

IV.   LIVING ESSENTIALS IS HIGHLY LIKELY
      TO SUCCEED ON THE MERITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

      A.    There Is Clearly A Likelihood Of Confusion Between
            Living Essentials' 5 HOUR ENERGY® Trademark And
            Packaging Trade Dress And Defendants' Imitation . . . . . . . . . . . . . . . . . . . . .  9

      B.    5 HOUR ENERGY® Is A Widely Used
            And Powerful Trademark . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

      C.    The Sunrise Climber Trade Dress Is Inherently
            Distinctive And Non-Functional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

V.    HARM TO LIVING ESSENTIALS' TRADEMARK
      IS PRESUMPTIVELY IRREPARABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

VI.   THE BALANCE OF HARDSHIPS TIPS
      DECIDEDLY IN LIVING ESSENTIALS' FAVOR . . . . . . . . . . . . . . . . . . . . . . . .  18

VII.  THE PUBLIC INTEREST WILL BE
      ADVANCED BY A PRELIMINARY INJUNCTION . . . . . . . . . . . . . . . . . . . . . . .  19

VIII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20



**Brooks Kushman P.C.**
1000 Town Center, 22ᵐ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

## **TABLE OF AUTHORITIES**

### **CASES**

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,*
280 F.3d 619 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*AMF, Inc. v. Sleekcraft Boats,*
559 F.2d 341 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Aveda Corp. v. Evita Marketing, Inc.,*
706 F.Supp. 1419 (D. Minn. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bauer Lamp Co. v. Shaffer,*
941 F.2d 1165 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Circuit City Stores, Inc. v. CarMax, Inc.,*
165 F.3d 1047 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*DAP Products v. Color Tile Manufacturing,*
821 F.Supp. 488 (S.D. Ohio 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center,*
109 F.3d 275 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dive 'N Surf, Inc. v. Anselowitz,*
834 F.Supp. 379 (M.D. Fla. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ferrari S.PA.Esercizio Fabriche Automobili e Corse v. Roberts,*
944 F.2d 1235 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 14

*Fotomat Corp. v. Photo Drive-Thru, Inc.,*
425 F.Supp. 693 (D. N.J. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Friendship Materials, Inc. v. Michigan Brick, Inc.,*
679 F.2d 100 (6th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Frisch's Restaurants v. Elby's Big Boy, Inc.,*
670 F.2d 642 (6th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Heinz v. Frank Lloyd Wright Foundation*
1986 WL 5996 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

*Interpace Corp. v. Lapp, Inc*,
　　721 F.2d 460 (3d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Liquid Glass Enterprises v. Dr. Ing. h.c.F. Porsche AG*,
　　8 F.Supp.2d 398 (D. N.J. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*,
　　43 F.3d 922 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McPherson v. Michigan High Sch. Athletic Ass'n*,
　　119 F.3d 453 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Minnesota Mining and Manufacturing Company v. Taylor*,
　　21 F.Supp.2d 1003 (D. Minn. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer
　　Pharmaceuticals Co.*,
　　290 F.3d 578 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Opticians Ass'n of America v. Craftex, Inc.*
　　816 F.2d 145 (4th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.*,
　　687 F.2d 563 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Polo Fashions v. Craftex, Inc.*,
　　816 F.2d 145 (4th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Estate of Presley v. Russen*,
　　513 F.Supp. 1339 (D. N.J. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Qualitex Co. v. Jacobson Products Co.*
　　514 U.S. 159 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*,
　　134 F.3d 749 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Topps Co. v. Gerrit J. Verburg Co.*
　　1996 WL 719381 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel　(248) 358-4400
Fax　(248) 358-3351

*Unsecured Creditors' Comm. of DeLorean Motor Co. v. DeLorean*
   *(In re Delorean Motor Co.)*,
      755 F.2d 1223 (6th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wal-Mart, Inc. v. Samara Bros., Inc.*,
      529 U.S. 205 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

### STATUTES

15 U.S.C. § 1052 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15 U.S.C. § 1114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 1125 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel     (248) 358-4400
Fax    (248) 358-3351

**ISSUE PRESENTED**

Whether a temporary restraining order and preliminary injunction should issue enjoining Defendants from further infringement of Plaintiff's 5 HOUR ENERGY® Trademark and Packaging Trade Dress rights in connection with their advertising and sale of a knock-off product pending the judgment in this case?

**Plaintiff Living Essentials answers:**           *Yes*



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel     (248) 358-4400
Fax     (248) 358-3351

## I.   INTRODUCTION

Over the last three and one-half years, plaintiff Innovations Ventures, LLC d/b/a Living Essentials ("Living Essentials") has sold a supplement under the 5 HOUR ENERGY® Trademark and Packaging Trade Dress as illustrated below.



The 5 HOUR ENERGY® supplement has been widely successful.  In just over three years, revenue from the sales of the 5 HOUR ENERGY® product has exceeded $110,000,000. Living Essentials has also invested substantially in advertising and marketing.  Living Essentials has spent over $30,000,000 in advertising and marketing in connection with the 5 HOUR ENERGY® Trademark and Packaging Trade Dress.  These sales and expenditures demonstrate the strength of Living Essentials' brand.  Indeed, the 5 HOUR ENERGY® supplement  is one of the most, if not the most, successful supplements on the market today.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel     (248) 358-4400
Fax     (248) 358-3351

In an effort to trade on Living Essentials' successful and recognized brand, the defendants N2G Distributing, Inc. and Alpha Performance Labs (collectively "Defendants") have *just recently introduced* a supplement that includes a knock-off of Living Essentials' mark.  As shown below, Defendants copied everything from the terrain climber at sunrise bottle to the box that the supplements are shipped and displayed in.









**LIVING ESSENTIALS**                                **DEFENDANTS**

Living Essentials seeks a temporary restraining order and preliminary injunction against Defendants to prevent Defendants' unauthorized use of Living Essentials' 5 HOUR ENERGY® Trademark and Packaging Trade Dress.  There is a strong likelihood of success on the merits.  Indeed, in the Sixth Circuit,  copying creates a presumption of likelihood of confusion —



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield,  MI 48075-1238
USA

Tel     (248) 358-4400
Fax     (248) 358-3351

the touchstone of Living Essentials' claims in this case.   Also, every day that the Defendants are allowed to offer to sell and distribute,  Living Essentials is irreparably harmed.  Living Essentials has essentially lost the ability to control which products its reputation and goodwill are being used to promote or endorse.  This lack of control and potential damage to Living Essentials' reputation constitutes irreparable injury because monetary damages cannot adequately compensate for this harm to Plaintiff's goodwill and reputation.

## II.   BACKGROUND FACTS

The facts set forth in this section are supported by the Declaration of Scott Henderson, attached hereto as Exhibit D.

1.      Plaintiff, Innovation Ventures, LLC, d/b/a  Living Essentials (hereinafter "Living Essentials"), is a Michigan limited liability company, having its principal offices at 46570 Humboldt Drive, Novi, Michigan 48377.

2.      Living Essentials is a national marketer and distributor of nutritional and dietary supplements sold under its many trademarks.

3.      Living Essentials is the owner of the 5 HOUR ENERGY® Trademark used by Living Essentials since September 2004 as a trademark for use with the 5 HOUR ENERGY® supplement.

4.      The 5 HOUR ENERGY® Trademark was duly and lawfully registered on September 27, 2005 and is currently registered on the Supplemental Register in the United States Patent and Trademark Office as U.S. Registration No. 3,003,077 ("the '077 registration").  A copy



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel     (248) 358-4400
Fax    (248) 358-3351

of the Certificate of Registration for this Trademark is attached as Exhibit A to the Henderson Declaration.

5.        Living Essentials has used the 5 HOUR ENERGY® Trademark of the '077 registration as its trademark continuously since September 2004 to the present in connection with its supplements, including in connection with promotion, marketing and advertising of supplements.

6.        Living Essentials is the owner of the 5 HOUR ENERGY® Packaging Trade Dress used since September 2004 by Living Essentials as packaging for its 5 HOUR ENERGY® product in connection with its supplements, including in connection with promotion, marketing and advertising of supplements, for sale throughout the United States.

7.        The 5 HOUR ENERGY® Packaging Trade Dress consists of the packaging illustrated in Exhibit B to the Henderson Declaration.  The 5 HOUR ENERGY® Packaging Trade Dress includes the terrain climber at sunrise design, the color scheme, the presentation of the 5 HOUR ENERGY® Trademark, and the shape of the bottle which includes a short neck and a main container with broad shoulders.

8.        The 5 HOUR ENERGY® Packaging Trade Dress is arbitrary, non-functional, and distinctive.  The terrain climber at sunrise bottle is not essential to the use or purpose of the supplement and does not affect the cost or quality of the supplement.  Instead, the terrain climber at sunrise bottle is an arbitrary and fanciful design that is used for source identification.

9.        The 5 HOUR ENERGY® Trademark and Packaging Trade Dress has been extensively, continuously, and exclusively used by Living Essentials since September 2004, is



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel      (248) 358-4400
Fax     (248) 358-3351

inherently distinctive, and has become distinctive through the acquisition of "secondary meaning." Living Essentials has spent over $30,000,000 in advertising and marketing related to the 5 HOUR ENERGY® Trademark and Packaging Trade Dress.  Living Essentials has used a nationwide network of distributors and has generated over $110,000,000 on its sales of the 5 HOUR ENERGY® product.  As a result of such continuous use and extensive sales, advertising and promotion of the 5 HOUR ENERGY® Trademark and Packaging Trade Dress by Living Essentials, the marks and products associated with the 5 HOUR ENERGY® Trademark and Packaging Trade Dress are recognized by the public as emanating from Living Essentials.

        10.    The 5 HOUR ENERGY® Trademark and Packaging Trade Dress symbolizes business goodwill of Living Essentials, and is an intangible asset of substantial commercial value.

        11.    On information and belief, Defendant, N2G Distributing, Inc., is a California corporation, having its principal place of business at 8020 Palm Avenue, Suite D, Highland, California 92346.

        12.    On information and belief, Defendant Alpha Performance Labs, is a Nevada corporation, having its principal place of business at 5448 Painted Gorge Drive, Las Vegas, Nevada 89149.

        13.    Less than two weeks ago, Living Essentials came to learn that the Defendants were advertising, distributing and taking orders for a supplement that included an imitation of Living Essentials' 5 HOUR ENERGY® Trademark and Packaging Trade Dress. Defendants exhibited at a trade show in Nevada that included many of Living Essentials' distributors and customers.  At the trade show, Defendants were distributing samples and taking



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

orders for a supplement that included an imitation of Living Essentials' 5 HOUR ENERGY®

Packaging Trade Dress and merely modified the 5 HOUR ENERGY® Trademark  to "6 Hour

Energy."  Defendants' advertising also indicated that their supplement is "available nationwide."

14.     In addition to their activity at the Nevada trade show, Defendants offer for

sale and sell their product bearing imitations of Living Essentials' 5 HOUR ENERGY® Trademark

and Packaging Trade Dress over the Internet and via phone orders to consumers nationwide.

Defendants also have a distribution center in Michigan.

15.     Defendants have no consent, license, approval or other authorization to use

the 5 HOUR ENERGY® Trademark and Packaging Trade Dress in connection with their products.

16.     Based on the success of Living Essentials and a review of the products

themselves, it is clear that Defendants copied Living Essentials' Trademark and terrain climber

sunrise bottle in its product.  Defendants also copied Living Essentials' "caution" verbatim which

further shows intentional copying by the Defendants.  Defendants' actions illustrate a calculated

attempt to misrepresent the source of Defendants' goods so as to cause confusion, mistake or to

deceive as to Defendants' connection or association with Living Essentials.

17.     Defendants' advertising and sale of products of unknown quality, including

imitations of the 5 HOUR ENERGY® Trademark and Packaging Trade Dress, damages the

reputation of Living Essentials and  has stripped Living Essentials of the ability to control which

products its reputation and goodwill are being used to promote or endorse.

**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield,  MI 48075-1238
USA

Tel     (248) 358-4400
Fax     (248) 358-3351

-6-

### III.  **ARGUMENT**

Four factors are relevant in considering a motion for preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998); *see also, McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc).  In the Sixth Circuit, these considerations are not "prerequisites" to the issuance of a preliminary injunction; they are factors to be "balanced" by the court.  *See, Unsecured Creditors' Comm. of DeLorean Motor Co. v. DeLorean (In re Delorean Motor Co.)*, 755 F.2d 1223, 1229 (6th Cir. 1985).

Thus, a strong showing as to likelihood of success on the merits may justify entry of a preliminary injunction upon a relatively lesser showing of irreparable harm.  Conversely, proof that the moving party will suffer significant irreparable injury may justify a preliminary injunction on a lesser showing of likelihood of success.  *See, In re DeLorean Motor Co.*, 755 F.2d at 1229 (holding that "the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction").  In other words, a moving party may be entitled to a preliminary injunction either upon a showing of "a strong or substantial probability of ultimate success on the merits," or on a showing of "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982).



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel     (248) 358-4400
Fax    (248) 358-3351

Living Essentials easily qualifies for preliminary injunctive relief because there is a strong likelihood that Living Essentials will succeed on the merits and the balance of hardships tips decidedly in Living Essentials' favor.  Indeed, preliminary injunctive relief is routinely granted in trademark cases on the basis of the important presumption that consumer confusion creates irreparable harm to the goodwill and reputation of the trademark owner. *See, Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995) ("[W]e recognize that irreparable injury regularly follows from trademark infringement.").

## IV.  LIVING ESSENTIALS IS HIGHLY LIKELY
## TO SUCCEED ON THE MERITS

For the reasons set forth below, Living Essentials is highly likely to succeed on the merits of its claims for trademark infringement, trade dress infringement, and related counts.

The essential element of Living Essentials' claims for trademark infringement is whether Defendants have used a reproduction or colorable imitation of its Trademark and Packaging Trade Dress in commerce which is likely to cause confusion, or to cause mistake, or to deceive. *See,* 15 U.S.C. § 1114(1)(a).  Living Essentials' claim for trade dress infringement, false designation of origin or sponsorship requires similar proof of likelihood of confusion "as to the affiliation, connection, or association" of Defendants with Living Essentials, or "as to the origin, sponsorship, or approval" of Defendants' products or services by Living Essentials. *See*, 15 U.S.C. § 1125(a)(1).  Likelihood of confusion is the touchstone of Living Essentials' claims in this case.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

**A.      There Is Clearly A Likelihood Of Confusion Between
Living Essentials' 5 HOUR ENERGY® Trademark And
Packaging Trade Dress And Defendants' Imitation**

Living Essentials' preliminary showing of likelihood of confusion is compelling.

Even at this early stage, it is clear that Living Essentials will easily establish that consumers will

likely be confused by Defendants' copy of Living Essentials' 5 HOUR ENERGY® Trademark and

Packaging Trade Dress in their product packaging, and in their sale and advertising of supplements.

The similarity between Living Essentials' Trademark and Packaging Trade Dress and Defendants'

products is undeniable.



<u>**DEFENDANTS**</u>      <u>**LIVING ESSENTIALS**</u>

Defendants' supplement includes the same terrain climber at sunrise design, the

same color scheme, the same presentation of the trademark, and the same size and shape of the

bottle as Living Essentials' supplement.  The lone alteration of 5 HOUR ENERGY® to "6 Hour

Energy" is truly insubstantial.  If anything, this alteration would lead consumers to falsely believe

that Defendants' product is Living Essentials' stronger version of its popular 5 HOUR ENERGY®

product.



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel      (248) 358-4400
Fax      (248) 358-3351

-9-

In many cases, likelihood of confusion can be established only by making an inquiry into a number of factors, such as the similarity of the parties' marks, the extent of competition, the overlap in marketing channels, characteristics of potential purchasers, and so forth.[1]  An example of such case would be a dispute between involving the use of the mark "Delta" by both Delta Airlines and Delta Faucets.  Such multi-factored balancing is unnecessary in other cases (such as this one) where Defendants have misappropriated Living Essentials' trademark on goods or services that are directly competitive.  In this latter set of cases, where the marks are "substantially similar as to both design and use[,] . . .the court presumes that defendant's counterfeit items caused public confusion in the marketplace." *Dive 'N Surf, Inc. v. Anselowitz*, 834 F.Supp. 379, 382 (M.D. Fla. 1993) (entering summary judgment on plaintiff's infringement claim on the ground that there was no genuine issue of fact in light of the presumption of confusion); *Ferrari S.P.A. Esercizio Fabriche Automobile e Corse v. Roberts*, 944 F.2d 1235, 1243 (6th Cir. 1991); *Polo Fashions v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (holding that a presumption of public confusion arises when counterfeit symbols are substantially identical to genuine symbols and are used in the same manner as the genuine symbols are used).

The Ninth Circuit has explained the difference in the two approaches as follows:

> When the goods produced by the alleged infringer compete for sales
> with those of the trademark owner, infringement usually will be

---

[1] The *Frisch* factors in the Sixth Circuit for determination of a likelihood of confusion include: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines. *Daddy's Junky*, 109 F.3d 275.  As demonstrated in the attached Declaration of Scott Henderson at paragraphs 10 and 15-18, each factor favors Living Essentials in this case.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

found if the marks are sufficiently similar that confusion can be expected.  When the goods are related, but not competitive, several other factors are added to the calculus.

*AMF, Inc. v. Sleekcraft Boats*, 559 F.2d 341, 348 (9th Cir. 1979).

This presumption of confusion in cases involving sufficiently similar trademarks on competing goods or services has been widely adopted.  *See, Interpace Corp. v. Lapp, Inc,* 721 F.2d 460, 462 (3d Cir. 1983) ("Where the trademark owner and the alleged infringer deal in competing goods or services, the court need rarely look beyond the mark itself."); *Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.*, 687 F.2d 563, 569 (2d Cir. 1982) (explaining that the holder of a mark "is presumptively entitled to protection from a newcomer's use of a similar mark in direct competition"); *Topps Co. v. Gerrit J. Verburg Co.*, 1996 WL 719381, *6, 41 USPQ2d 1412, 1417 (S.D. N.Y. 1996) ("Where the marks are identical and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the . . . factors."); *see also, Bauer Lamp Co. v. Shaffer*, 941 F.2d 1165, 1172 (11th Cir. 1991) (holding that defendant's deliberate copying of plaintiff's trade dress creates a "presumption of likelihood of confusion").  By a simple comparison of the products, likelihood of confusion is undeniable.  It is especially appropriate in this situation whether both Plaintiff and Defendants compete in the same supplement market and their products are directed to the same consumers.

Under Sixth Circuit law, copying creates a presumption of likelihood of confusion. *Ferrari S.PA. Esercizio Fabriche Automobili e Corse v. Roberts*, 944 F.2d 1235, 1242-43 (6th Cir. 1991)(holding that "presumption of likelihood of confusion . . . follows from intentional copying");



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel      (248) 358-4400
Fax     (248) 358-3351

*see also, Frisch's Restaurants v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982)("since the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff,] *that fact alone may be sufficient to justify the inference that there is confusing similarity*.")(emphasis in original).   This case presents a textbook example of a defendant copying a widely successful trademark and trade dress to trade off of the goodwill developed by the plaintiff.  The similarities extend from the terrain climber at sunrise bottle, to the color scheme and outline of the primary logo, and to the boxes in which the bottles are displayed at the point of sale.  As noted above, the Defendants even copied the caution label that Living Essentials created for its supplement as illustrated below:



**LIVING ESSENTIALS   DEFENDANTS**



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

**B.      5 HOUR ENERGY® Is A Widely Used
        And Powerful Trademark**

As noted above, the 5 HOUR ENERGY® Trademark has been used exclusively by Living Essentials since at least September 2004.  The 5 HOUR ENERGY® Trademark was designed to identify and distinguish 5 HOUR ENERGY® goods from those sold by others.  Over the course of the last three and one-half years, Living Essentials has acquired distinctiveness in its 5 HOUR ENERGY® Trademark.  Living Essentials' supplement is quite popular in the marketplace, and has generated revenue of over $110 million.

Living Essentials has also invested substantially — on the order of $30 million — in nationwide advertising and marketing to promote the trademark.  Indeed, the 5 HOUR ENERGY® supplement is one of the most successful, if not the most successful, supplement in the market.  Indeed, sales of Living Essentials' 5 HOUR ENERGY® supplement continue to grow quarter over quarter.  In the first two months of 2008 alone, Living Essentials has sold over $22 million worth of this supplement.  This success is based on the development of a quality reputation and product associated with the 5 HOUR ENERGY® Trademark.

This extensive use and marketing has led to the acquisition of acquired distinctiveness, also called secondary meaning.  The Sixth Circuit typically considers seven factors for determining secondary meaning, including:

    (a)      direct consumer testimony;
    (b)      consumer surveys;
    (c)      exclusivity, length, and manner of use;
    (d)      amount and manner of advertising;
    (e)      amount of sales and number of customers;

**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield,  MI 48075-1238
USA

Tel      (248) 358-4400
Fax      (248) 358-3351

-13-

(f)     established place in the market; and

(g)     proof of intentional copying

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc*., 280 F.3d 619, 640 (6th Cir. 2002).

Even at this early stage, secondary meaning is clearly established by the extensive and exclusive use of the 5 HOUR ENERGY® Trademark on Living Essentials' one-dose vitamin supplement.[2]   The sales, advertising and exclusive place in the market as a leading supplement cannot be disputed.  While there are no surveys or consumer testimony on this record, the final factor of intentional copying is particularly significant in this case.

In the Sixth Circuit, secondary meaning can be presumed when it is apparent that the defendant intentionally copied the plaintiff's trade dress as is the case here.

> The evidence of intentional copying shows the strong secondary meaning of the Ferrari designs because "there is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence." *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc., 283 F.2d 551, 558 (9th Cir. 1960).*
>
> *Ferrari S.PA. Esercizio Fabriche Automobili e Corse v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991); *see also DAP Products v. Color Tile Manufacturing*, 821 F.Supp. 488, 492 (S.D. Ohio 1993)(Secondary meaning can be presumed where a court can infer that the defendant intentionally copied plaintiff's color scheme.)



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

---

[2]  Secondary meaning is statutorily presumed based on five years of substantially exclusive use, without any showing of sales or advertisements.  15 U.S.C. § 1052(f).  Here, we have three and one-half years of exclusive use coupled with hundreds of millions in sales and advertisements.

**C.    The Sunrise Climber Trade Dress Is Inherently
Distinctive And Non-Functional**

Packaging Trade Dress is protectable when it has acquired secondary meaning **or**
when it is inherently distinctive. *Wal-Mart, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212-13
(2000)("Consumers are therefore predisposed to regard those symbols [such as 'brightly decorated
plastic bottles'] as indication of the producer, which is why such symbols 'almost *automatically* tell
a customer that they refer to a brand,' *514 U.S. at 162-163,* and 'immediately . . . signal a brand or
a product source,'" *514 U.S. at 163.* Citing *Qualitex Co. v. Jacobson Products Co.,* 514 U.S. 159
(1995).) Here, as recognized in *Wal-Mart*, the brightly colored plastic bottle design that includes
the terrain climber at sunrise is protectable trade dress[3] because it is inherently distinctive. In any
event, as set forth above, the 5 HOUR ENERGY® Packaging Trade Dress has certainly acquired
secondary meaning through its extensive use in the marketplace.

For a trade dress claim, Living Essentials must also show that the terrain climber
at sunrise is not functional. 15 U.S.C. § 1125(a)(3). An asserted trade dress is functional if it is
essential to the use or purpose of the product. Here, the design on the bottle has absolutely nothing
to do with the use of purpose of the supplement and does not affect the cost or quality of the
supplement. The 5 HOUR ENERGY® Packaging Trade Dress is not functional. *Abercrombie
& Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 642 (6th Cir. 2002). There

---

[3]  As noted above, the 5 HOUR ENERGY® Packaging Trade Dress includes the terrain
climber at sunrise design, the color scheme, the presentation of the 5 HOUR ENERGY®
Trademark, and the shape of the bottle which includes a short neck and a main container with broad
shoulders – all aspects that have been copied by the Defendants.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

are countless other bottle designs that could have been employed by Defendants, but they decided to trade off of the goodwill developed by Living Essentials.

## V.  HARM TO LIVING ESSENTIALS' TRADEMARK IS PRESUMPTIVELY IRREPARABLE

Courts have long adopted a presumption that irreparable injury "follows as a matter of course" from the infringement of valuable trademark rights.  *Opticians Ass'n of America v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987); *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999)("[I]rreparable injury 'ordinarily follows when a likelihood of confusion or possible risk to reputation appears' from infringement or unfair competition. . . . Thus, a court need only find that a defendant is liable for infringement or unfair competition for it to award injunctive relief.")

The presumption of irreparable injury is appropriate here.  If Defendants are permitted to continue misappropriating the 5 HOUR ENERGY® Trademark and Packaging Trade Dress, Living Essentials will suffer irreparable damage to its goodwill and reputation by the loss of control over its trademarks.  As another court explained:

> In the context of trademark litigation, "grounds for irreparable harm include loss of control of reputation, loss of trade, and loss of goodwill," regardless of whether the infringer is putting the mark to a good or favorable use.  *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992).  Liquid Glass's unauthorized use of the Porsche marks inhibits Porsche's ability to control which products its reputation and good will are being used to promote or endorse.  This lack of control and potential damage to Porsche's



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

reputation constitutes irreparable injury because monetary damages cannot adequately compensate for harm to good will or reputation.

*Liquid Glass Enterprises v. Dr. Ing. h.c.F. Porsche AG*, 8 F.Supp.2d 398, 406 (D. N.J. 1998).

In other words, Plaintiff's "lack of ability to control the nature and quality of services provided under an infringing . . . mark, even if defendant matches the high quality of plaintiff's services, constitutes irreparable injury." *Fotomat Corp. v. Photo Drive-Thru, Inc.*, 425 F.Supp. 693, 711 (D. N.J. 1977).

Because of the inherent difficulty of placing a value on the damage to such intangibles as the goodwill or reputation of a business, courts routinely grant injunctions in trademark actions. *See, e.g., Aveda Corp. v. Evita Marketing, Inc.*, 706 F.Supp. 1419, 1431 (D. Minn. 1989) ("Any hardship caused by the preliminary injunction may justly fall on the parties which consciously decided to dress their goods for the market in a manner 'so near to [a] successful rival that the public may fail to distinguish between them.'"). Thus, if Defendants are permitted to continue misappropriating the 5 HOUR ENERGY® Trademark and Packaging Trade Dress, Living Essentials will suffer irreparable damage to its goodwill and reputation by the loss of control over its trademark.

In this case, there is even further irreparable damage. Defendants' product of unknown quality and Defendants' product does not include industry cautions for products that include phenylalanine.[4] Customers that have a negative reaction to Defendants' products may



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

---

[4] Defendants' product includes L-phenylalanine on the ingredients list, but not does include a Phenylketonurics caution. *See* illustration on page 12, *infra*.

-17-

mistakenly believe that the Defendants' product is associated or affiliated with Living Essentials. Living Essentials can no longer control its own reputation in the marketplace, and Living Essentials' reputation is at serious risk.

## VI.  THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN LIVING ESSENTIALS' FAVOR

Under these circumstances, the balance of hardships tips decidedly in Living Essentials' favor.  While the injury to Living Essentials is immeasurable and irreparable, the only "harm" to Defendants will be an injunction against their attempts to misappropriate the 5 HOUR ENERGY® Trademark and Packaging Trade Dress by using the goodwill associated with Living Essentials to draw consumers to Defendants' business and websites, and to otherwise confuse consumers.  No legitimate purpose is served by this misappropriation of the 5 HOUR ENERGY® Trademark and Packaging Trade Dress, and no cognizable injury will result.  *See, Minnesota Mining and Manufacturing Company v. Taylor,* 21 F.Supp.2d 1003, 1005 (D. Minn. 1998) (finding that a preliminary injunction against defendant's misappropriation of the "POSTIT.COM" domain name would not cause "any harm" to the defendant).

Living Essentials' injury is monumental and incalculable by comparison.  Living Essentials has invested substantial sums in the development and marketing of its valuable trademarks and trade dress, and Defendants' violation of Living Essentials' trademark rights poses an immeasurable threat to Living Essentials' goodwill as explained above.

To the extent there is any risk of harm to Defendants, such harm is easily calculable and cannot be deemed irreparable.  At most, Defendants' losses (if any) from the injunction sought



Brooks Kushman P.C.
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

-18-

by Living Essentials would be a loss of revenues.[5]  Where any "potential losses to the defendant are easily calculable," the balance of hardships tips strongly in the plaintiff's favor.  *See, Heinz v. Frank Lloyd Wright Foundation*, 1986 WL 5996, 229 USPQ 201, 210 (W.D. Wis. 1986) (plaintiff's loss of goodwill not quantifiable, and therefore outweighs defendant's loss of sales which can be calculated).

## VII.  THE PUBLIC INTEREST WILL BE ADVANCED BY A PRELIMINARY INJUNCTION

Finally, the public interest also favors entry of a preliminary injunction in this case because "the public is interested in fair competitive practices and clearly opposed to being deceived in the marketplace." *Estate of Presley v. Russen*, 513 F.Supp. 1339, 1382 (D. N.J. 1981); *see also, Green Products*, 992 F.Supp. at 1081 (holding that a preliminary injunction against a defendant's misappropriation of plaintiff's trademark in a domain name advances the public interest).

---



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

[5]  Any loss of revenue may be "discounted by the fact that the defendant brought that injury upon itself" by its intentional copying.  *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578 (3d Cir. 2002)(preliminary injunction against false advertising was granted and affirmed.)

## VIII.   CONCLUSION

For the foregoing reasons, the Court should grant a temporary restraining order and a preliminary injunction enjoining Defendants from imitating, copying, or making unauthorized use of the 5 HOUR ENERGY® Trademark and Packaging Trade Dress in their advertisement and sale of supplements and other products.


Respectfully submitted,

**BROOKS KUSHMAN P.C.**


By:  /s/ Marc Lorelli
  MARK A. CANTOR  (P32661)
  MARC LORELLI   (P63156)
  1000 Town Center
  Twenty-Second Floor
  Southfield, Michigan 48075
  (248) 358-4400
  E-mail: mantor@brookskushman.com
      mlorelli@brookskushman.com

   *Attorneys for Plaintiff*

Dated:   March 13, 2008



Brooks Kushman P.C.
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel (248) 358-4400
Fax (248) 358-3351