# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

———

**INNOVATION VENTURES, LLC
d/b/a LIVING ESSENTIALS,**
a Michigan limited liability company,

       *Plaintiff,*

                                     Hon.  **Paul D. Borman**

vs.

                                     Civ. Action No. **2:08-CV-10983**

**N2G DISTRIBUTING, INC.**
a California corporation, and
**ALPHA PERFORMANCE LABS**
a Nevada corporation

       *Defendants.*

                                   ***JURY TRIAL DEMANDED***

---

| | |
|---|---|
| MARK A. CANTOR    (P32661) | JEFFREY G. HEUER    (P14925) |
| MARC LORELLI    (P63156) | PETER M. FALKENSTEIN    (P61375) |
| **BROOKS KUSHMAN P.C.** | **JAFFE RAITT HEUER & WEISS P.C.** |
| 1000 Town Center | 27777 Franklin Road |
| Twenty-Second Floor | Suite 2500 |
| Southfield, Michigan  48075 | Southfield, Michigan 48034 |
| (248) 358-4400 | (248) 351-3300 |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

---



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield,  MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION PURSUANT TO FED. R. CIV. P. 12(b)(6)
## TO DISMISS THE SECOND AMENDED COMPLAINT IN PART
## OR FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page**

CONCISE STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  UNDISPUTED BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.   Defendants' Motion To Dismiss The Copyright Claims
          For Failure to State a Claim Should Be Denied . . . . . . . . . . . . . . . . . . . . . . . 5

     B.   Disputed Material Facts Preclude Summary
          Judgment on Counts IV and VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     C.   Living Essentials Alleged a Viable Claim of Trade Dress Infringement . . . 12

     D.   Living Essentials' 5 HOUR ENERGY® Product
          Line Packaging Is Protectable Trade Dress . . . . . . . . . . . . . . . . . . . . . . . . . 14

     E.   Summary Judgment On Living Essentials' Trade Dress Claim
          Is Premature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

## <u>CONCISE STATEMENT OF ISSUES</u>

1.    Should this Court deny Defendant Motion to Dismiss  the copyright claims of the Second Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56?

Plaintiff Answers:  Yes

2.    Should this Court deny Defendants' Motion to Dismiss the trade dress claims of the Second Amended Complaint?

Plaintiff Answers:  Yes



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield,  MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

## I.  **INTRODUCTION**

Defendants N2G and Alpha Labs' request dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56 of Living Essentials' claims in the Second Amended Complaint of copyright infringement (Count IV) and contributory copyright infringement and/or vicarious liability for copyright infringement (Count VII).  Defendants also ask for dismissal and/or summary judgment (pursuant to Fed. R. Civ. P.  56(c)) of Living Essentials' claim (in Count II) that the PURE ENERGY product violates the trade dress of Living Essentials' 5 HOUR ENERGY® products.

Defendants' assertions are without merit.  All of Living Essentials claims were adequately pled in its Second Amended Complaint.  Aware of this fact, Defendants request that this Court convert the motion to one of summary judgment under Fed. R. Civ. P. 56 prior to any discovery in this case.   The summary judgment motion is equally baseless.  Genuine issues of material fact preclude summary judgment in this case.  Defendants' motion should be denied in its entirety.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield,  MI 48075-1238
USA

Tel     (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

## II.  UNDISPUTED BACKGROUND FACTS

1.      Living Essentials owns the 5 HOUR ENERGY® Trademark, U.S. Registration No. 3,003,077, which has been registered on the Supplemental Register of the United States Patent and Trademark Office since September 27, 2005.  (Exhibit A, Certificate of '077 Registration.)

2.      Since at least September 2004, Living Essentials has continuously used the 5 HOUR ENERGY® Trademark and Packaging Trade Dress in the promotion, marketing and advertisement of its popular 5 HOUR ENERGY® 2-ounce liquid energy supplements, which are sold throughout the United States and Canada.  (Exhibit B, Decl. of Scott Henderson at ¶¶ 5,6.)

3.      Living Essentials displays an original caution label created for Living Essentials by one of its employees.  (Exhibit H, Declaration of Carl Sperber at ¶ 2.)  Living Essentials caution label is an original arrangement of words describing certain facts about Living Essentials product.

4.      Living Essentials' caution label is registered with the United States Copyright Office.  (Exhibit C, Copyright Registration.)

5.      Recently, N2G and Alpha Labs began promoting, marketing, advertising and distributing a competing 2-ounce liquid energy supplement, the 6 HOUR ENERGY shot, which copies Living Essentials' 5 HOUR ENERGY® Trademark and Packaging Trade Dress. (Exhibit D.)

**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield,  MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

6.      On its packaging of 6 HOUR ENERGY and its other competing 2-ounce supplement, NITRO 2 GO INSTANT ENERGY, Defendants include a verbatim copy of Living Essentials' copyright-protected 5 HOUR ENERGY® caution label:



**5 HOUR ENERGY®**



**6 Hour Energy**



**Nitro 2 Go Instant Energy**

7.      N2G and Alpha Labs recently introduced another 2-ounce liquid supplement, PURE ENERGY, which conflates and mimics Living Essentials' 5 HOUR ENERGY® Packaging Trade Dress for the original and extra strength supplements by incorporating the sunrise and mountain designs from both and the color scheme of the extra strength version:



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel     (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

-3-

  

8.     As they did with the 6 HOUR POWER and NITRO 2 GO supplements, Defendants inserted a verbatim copy of Living Essentials' copyrighted caution label on their PURE ENERGY packaging.

9.     Numerous other manufacturers of "energy shots" have followed Living Essentials into the market.  Although each appear to have copied elements of Living Essentials' caution label, none, other than Defendants, copied the entire label verbatim.   (Defendants' Exhibit 2 at pp. 3, 4, 5, 8, 9.)

10.     Based on these acts of infringement, Living Essentials alleged multiple claims of trademark and copyright infringement.  See Second Amended Complaint.

11.     Living Essentials pled a *prima facie* case of copyright infringement by asserting that (1) it owned a valid copyright and (2) Defendants copied the protected material. (Second Amended Complaint at ¶¶ 23, 54, 55.)



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield,  MI 48075-1238
USA

Tel      (248) 358-4400
Fax     (248) 358-3351

www.brookskushman.com

12.     Living Essentials pled a *prima facie* case of trade dress infringement by asserting that (1) it owned a distinctive, non-functional trade dress and (2) Defendants use of the trade dress is likely to cause confusion in the marketplace.  (*Id*. at ¶¶ 15, 16, 40.)

13.     Defendants N2G and Alpha Labs seek dismissal of Living Essentials' claims in Counts IV and VII, and dismissal or summary judgment of the PURE ENERGY trade dress infringement claim in Count II.  Defendant Diehl joined N2G and Alpha Labs' motion.

## III.  ARGUMENT

### A.     Defendants' Motion To Dismiss The Copyright Claims For Failure to State a Claim Should Be Denied

Living Essentials properly alleged a *prima facie* case of copyright infringement. That is all that is required to withstand a motion to dismiss for failure to state a claim.  As such, Defendants' motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) must be denied.

As discussed above, Living Essentials need only plead a *prima facie* case of copyright infringement.  To state a *prima facie* claim for copyright infringement under 17 U.S.C. §501, a plaintiff must show:  1) ownership of a valid copyright, and 2) copying by defendant of elements of the work that are original.  *Lexmark International, Inc. v Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004); 4 *Nimmer on Copyright* § 13.01 (2007). Defendants do not dispute that they copied Living Essentials' caution label verbatim on at least three of their products, or that Living Essentials adequately alleged as much in its Second Amended Complaint.  *See* Second Amended Complaint at ¶¶28, 52-63.  Therefore, the only



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield,  MI 48075-1238
USA

Tel     (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

issue before the Court is whether Living Essentials **alleged** that it has a valid copyright which protects the label from such copying.

The significance of a copyright registration is discussed in 17 U.S.C §501(c):

> In any judicial proceedings **the certificate of registration** made before or within five years after first publication of the work **shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate**. (emphasis added.)

Here, Living Essentials alleged that it owned a valid copyright registration in its caution label, a copy of which was attached to the Complaint. (*See,* Second Amended Complaint at ¶¶ 23, 54, 55.)  The registration is *prima facie* evidence of a valid copyright.  Because Living Essentials' Complaint states a *prima facie* case of copyright infringement, Defendants' motion to dismiss for failure to state a claim in Count IV must be denied.  *League of United Latin American Citizens*, 500 F.3d at 527.

Diehl's motion to dismiss Living Essentials' claims against Diehl for contributory and vicarious liability (Count VII) must also be denied inasmuch as the claims are adequately pled and he does not offer substantive arguments to the contrary.  Therefore, Defendants' motion to dismiss Count II must also be denied.

**B.    Disputed Material Facts Preclude Summary Judgment on Counts IV and VII**

Aware that their Fed. R. Civ. P. 12(b)(6) motion for failure to state a valid copyright claim is baseless, Defendants request that this Court convert the motion to a Fed. R. Civ. P. 56 motion for summary judgment.  (Def. Brief at 5.)  Defendants' summary judgment



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

motion is equally baseless because, at a minimum, there are material factual disputes as to whether Living Essentials' label is entitled to copyright protection.

Where, as here, the plaintiff has a registered copyright, there is a rebuttable presumption that the plaintiff owns a valid copyright. *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.,* 58 F.3d 1093, 1095 (6th Cir. 1995). Indeed, the U.S. Copyright Office reviewed plaintiff's copyright application on its caution label and found it worthy of copyright protection. This fact alone makes Defendants' summary judgment burden difficult to meet.[1]

Defendants attempt to rebut the presumption by arguing that the text of Living Essentials' caution label is not entitled to copyright protection because it lacks the requisite originality. (Def. Brief at 6.) Defendants further contend that, under the doctrines of "merger" and "scenes *a faire*," copyright protection is not available because there is only one way to express the information on Living Essentials' label. (*Id.* at 7.) There is no merit to either claim.

"The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author." *Feist Pubs., Inc. v. Rural Telephone Service Company, Inc.*, 499 U.S. 340, 345 (1991). However, "[o]riginal . . . means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some **minimal degree of creativity**." *Id.* (emphasis added). "**[T]he requisite level of creativity is extremely low; even a slight amount will suffice.**" *Id.* (emphasis added).



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

---

[1]  Defendants assert that copyrights are granted as a "matter of course" to all that file applications. That is false. As 17 U.S.C. §410(a) states, each application is examined to determine if it meets the requirements for patentability – including originality.

And, novelty is not required. "[A] work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id*.

Defendants contend that Living Essentials' label merely states facts about the ingredients in the supplements, provides information on proper use, and cites potential side effects. (Def. Brief at 6.) Therefore, they assert that Living Essentials' label is neither original nor creative and, consequently, that it is not subject to copyright protection. *Id*.

Defendants are wrong. Living Essentials' label is not merely a statement of facts but is an original arrangement of words describing certain facts about Living Essentials' product.[2] (Exhibit G at ¶ 3.) Living Essentials' selection of words, as well as their arrangement and organization, are original and creative and thus, entitled to copyright protection. At a minimum, there are factual disputes as to whether the caution label is original. Thus, Defendants' motion for summary judgment must be denied.

In *Feist*, the Supreme Court made clear that facts may not be copyrighted, but "if the compilation author clothes facts with an original collocation of words, he or she may be able to claim a copyright in this written expression." 499 U.S. at 389. This principal was illustrated in *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556-

---

[2]   Each of the cases Defendants rely upon to support their claim to the contrary is distinguishable on the facts. *See, PortionPac Chemical Corp. v. Sanitech Systems,* 217 F.Supp.2d 1238 (M.D. Fla. 2002)(plaintiff claimed protection is only possible way to express facts – not the case here); *Matthew Bender & Co. v. West Publishing Co.*, 158 F.3d 674, 688 (2nd Cir. 1998)(not a summary judgment case, Court weighed evidence); *National Nonwovens, Inc. v. Consumer Products Enterprises,* 397 F.Supp.2d 245 (D. Mass 2005)(plaintiff claimed protection is only possible way to express facts – not the case here). They are, therefore, inapposite.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel     (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

57(1985),  where the Supreme Court explained that while President Gerald Ford could not prevent others from copying bare historical facts from his autobiography, he could prevent others from copying his "subjective descriptions" of these facts.

Here, Living Essentials' caution label is not a bare recitation of facts as Defendants assert, but is instead an original, creative description of its product. This is plainly illustrated by the sentence in Living Essentials' label that states "Contains caffeine comparable to a cup of the leading premium coffee." The "bare" fact is the amount of caffeine in the 5 HOUR ENERGY product. Had the label stated "X grams of caffeine," it would be stating a bare fact not protectable by copyright. That is clearly not the case. Living Essentials instead coined a "subjective description" in an "original collocation of words" to describe the amount of caffeine present in its product.

Indeed, there are not "only a few ways" of expressing the amount of caffeine in these products as Defendants assert – there are thousands. As examples, the amount of caffeine could have been expressed in the following ways: "About as much caffeine as a can of diet cola," or "Contains as much caffeine as X number of coffee beans." Each of these statements, like the statement on Living Essentials' label, is far from a bare recitation of facts. They are creative statements that describe the amount of caffeine in the product. As such, they are protectable under the copyright laws. At a minimum, there is a genuine issue of fact as to whether this caution label is original.

Moreover, even if the statements in the caution label are bare facts — which they are not — the arrangement of the compilation of the information in Living Essentials' label is

**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

protected by copyright. It is well settled that, although facts are not copyrightable, compilations of facts are entitled to copyright protection if the selection and arrangement of those facts is original and exhibits a minimal degree of creativity. *Feist*, 499 U.S. at 348.

That Living Essentials' caution label meets this very low threshold and is more than a rote recitation of facts or mechanical instructions is most aptly demonstrated by Defendants' identification of at least three distinctly different expressions of similar information on the caution labels of competing energy supplements:

Turbo Power Energy
Contains approximately the same amount of caffeine as a cup of coffee, limit other caffeine products to avoid nervousness, sleeplessness, and occasionally rapid heartbeat. Keep out of reach of children. You should always consult a physician before starting a new exercise or nutritional program, especially if pregnant, nursing or on medications. NOT FOR CHILDREN UNDER 12.

6 Hour Power
Contains about as much caffeine as a cup of brewed coffee. Limit or avoid products containing caffeine to avoid jitters, sleeplessness, and rapid heartbeat. 6 Hour Power contains Niacin (Vitamin B3) so some people may experience a flush feeling, hot sensation or redness of the skin for a few minutes. Not for use by children, pregnant women or individuals sensitive to caffeine.

Ephrine Plus
A serving of this product has about as much caffeine as two cups of coffee. Limit the use of caffeine-containing drugs, foods, or beverages while taking this product because too much caffeine may cause nervousness, irritability, sleeplessness, and occasionally rapid heartbeat.

(Defs. Exhibit 2.)



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

Significantly, Defendant Alpha Labs' own caution label on its recently introduced FIREPOWER EXTREME energy supplement contains yet another variation of the same information:

> Not for use by children under 12 yeas of age. Caution: You may experience a "Niacin Flush" (hot feeling, skin redness) which lasts up to a few minutes. Niacin (Vitamin B3) increases blood flow near the skin. Contains about as much caffeine as a cup of coffee, limit caffeine products if you experience nervousness, sleeplessness, or rapid heartrate. Effectiveness determined by individual metabolism.

(Ex. E.)

Each of these caution labels followed 5 HOUR ENERGY® into the marketplace and all were almost surely patterned after Living Essentials' caution label. Yet, each label managed to compile the information in a different way. Defendants, however, chose to copy Living Essentials' label verbatim. At a minimum, these varying caution labels illustrate that Living Essentials' selection and arrangement of information on its label are original and exhibit at least a modicum of creativity. Summary judgment must be denied.

The varying labels also show that the "merger" and "scenes *a faire*" (*i.e.*, "scenes . . . that must be done") doctrines do not apply. *Lexmark*, 387 F.3d at 535. Merger and scenes *a faire* are related doctrines which foreclose copyright protection when either: 1) the form of expression is dictated by the idea, such that the idea and expression are said to have "merged," or 2) there is only one way or few ways to express an idea. *Lexmark*, 387 F.3d at 535; *FMC Corp. v. Control Solutions, Inc.*, v 369 F.Supp.2d 539, 567 (E.D. Pa. 2005); *Compaq Computer Corp. v. Ergonome Inc.*, 137 F.Supp.2d 768, 777 (S.D. Tex. 2001).



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

Where, however, there are other feasible and practical ways to express the same idea, neither doctrine applies. *Lexmark*, 387 F.3d at 536; *FMC Corp.*, 369 F.Supp.2d at 567; *Comaq*, 137 F.Supp.2d at 777-778; *Compaq Computer Corp. v. Ergonome Inc.,* 137 F.Supp.2d at 778 ( "[w]hile all these books and manuals express the same essential idea, the form or expression in which that idea manifests differs widely, tangibly demonstrating that [defendant's] particular expression is not so generic that it is merged with the ideas represented." ); *FMC Corp. v. Control Solutions, Inc.,* 369 F.Supp.2d at 567 (neither doctrine applied because the plaintiff presented evidence of multiple ways to express the same information found on plaintiff's product label.)

Here, the variety demonstrated in just a small sampling of competing energy supplements indisputably shows that the manner in which Living Essentials chose to express the information and warnings on its caution label is one of many ways to do so, and that other forms of expression are not, as Defendants claim, prohibitively limited or entirely foreclosed. Therefore, Defendants failed to rebut the presumption that Living Essentials' copyright is valid and their motion for summary judgment on Counts IV and VII should be denied.

**C.**    **Living Essentials Alleged a Viable Claim of Trade Dress Infringement**

Defendants first contend that Living Essentials' claim of trade dress infringement in Count II should be dismissed because the pictures in the Second Amended Complaint illustrating the trade dress elements Living Essentials seeks to protect are not sufficiently specific. *See* Second Amended Complaint at ¶14. Defendants' assertion, however, is contrary to Fed. R. Civ. P.  8(a)(2), which only requires "a short and plain statement of the claim



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

showing that the pleader is entitled to relief."  It is also directly contrary to the very authority

Defendants cite in support of their claim, as well as Sixth Circuit authority.

Defendants cite *Hammerton v. Heisterman*, 2008 W.L. 2004327 (D. Utah May 9,

2008) and imply that the Utah District Court held that an itemized list of the trade dress

elements a plaintiff seeks to protect must be set forth in the complaint.  But, *Hammerton* does

not stand for this proposition.  First, because the *Hammerton* Court was considering a motion

for summary judgment (rather than dismissal as is requested here), it did not discuss what is

minimally required under Fed. R. Civ. P.  12(b)(6) to state a trade dress claim.  Second, the

*Hammerton* Court only granted defendant's motion for summary judgment because the plaintiff

failed (during discovery, two rounds of briefing on the summary judgment motion, and a

hearing) to clarify exactly what trade dress elements it sought to protect.  Notably though,  the

Court was willing to permit plaintiff to articulate the trade dress elements at issue in a

supplemental brief even after discovery closed and the summary judgment was filed.  *Id.*

The Sixth Circuit in *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405,

415 (6th Cir. 2006), likewise, found it sufficient for a plaintiff to identify its trade dress elements

post-discovery.  The Court stated that "the discrete elements which make up [the trade dress]

should be separated out and identified in a list," and that plaintiff met its burden by providing

such a delineation in its summary judgment brief.  *Id*.

With respect to what must minimally be alleged to state a trade dress claim, the

Sixth Circuit in *Abercrombie & Fitch v. American Eagle Outfitters*, 280 F.3d 619, 635 (6th Cir.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield,  MI 48075-1238
USA

Tel     (248) 358-4400
Fax     (248) 358-3351

www.brookskushman.com

-13-

2002), found that the inclusion of pictures in the complaint which depicted the trade dress at issue was sufficient to satisfy the plaintiff's burden to put the defendant on notice of its claims:

> While the language of Abercrombie's complaint rides the cusp of sufficient particularity, with its occasional overbreadth leaving some claims devoid of meaning, A&F attached to its complaint photographic depictions of designs it claimed constituted its trade dress and the record now contains volumes of photographic exhibits depicting its garment designs and the design of its [catalogue]. A complaint is neither an injunction nor a judgment; it merely puts the defendant on notice of the plaintiff's claims.

*Hammerton*, *Lanard*, and *Abercrombie* make it clear that, Living Essentials' illustrations in the Second Amended Complaint of the trade dress it seeks to protect are sufficient to put Defendants on notice of its claims. Therefore, Defendants' motion to dismiss Count II on this ground should be denied.

### D.   Living Essentials' 5 HOUR ENERGY® Product Line Packaging Is Protectable Trade Dress

Defendants next contend that they are entitled to summary judgment because Living Essentials cannot show that their PURE ENERGY supplement infringes upon a "consistent overall look" in Living Essentials' entire 5 HOUR ENERGY® product line—which Defendants assert includes the two supplements identified in the complaint (original and extra strength), *see* Second Amended Complaint at ¶14, and a third decaffeinated version which is not included in the complaint. There is no merit to this claim.

Section 43(a) of the Lanham Act protects trade dress, which is defined as "the image and overall appearance of a product," and "may include features such as size, shape, color or color combinations, texture, graphics or even a particular sales technique." *Abercrombie &*



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

*Fitch*, 280 F.3d at 629 (citation and quotation marks omitted).  Trade dress "embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, that makes the source of the product distinguishable from another and . . . promotes its sale."  *Id*. (citation and quotation marks omitted).

When a party seeks trade dress protection for a single product, it must prove that: (1) its trade dress is not functional; (2) its trade dress is distinctive in the marketplace and has acquired secondary meaning, thereby indicating the source of the goods; and (3) the trade dress of the accused product is confusingly similar.  *Lanard*, 468 F.3d at 414.  When, however, a party seeks trade dress protection for a series or line of products or packaging, a party must first show that the series or line of products has a recognizable and consistent overall look.  *Rose Art Industries, Inc. v Swanson*, 235 F.3d 165, 172-173 (3rd Cir. 2000).

Per Defendants, the only features the packages have in common are the terrain runner and the 5 HOUR ENERGY® trademark.  Defendants say other features—the color scheme and mountain sunrise design—either do not appear on each bottle or appear in varied form.  Defendants argue that this supposed lack of consistency precludes a finding that the 5 HOUR ENERGY® line of products has a consistent overall look (and that Living Essentials omitted the decaffeinated version from its complaint in order to conceal this fact).

In support, Defendants cite *Rose Art Industries, Inc. v. Swanson*, *supra*, which states that a party seeking protection for a line or series of products must first demonstrate that the products have a consistent overall look.  They also cite *Walt Disney Company v. Goodtimes Home Video Corp.*, 830 F.Supp. 762 (S.D.N.Y. 1993), where the Court found that plaintiff's 17 videocassette

**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

-15-

packages for different animated features did not have a consistent overall look because of variations in each package.

Once again, Defendants' position is directly contrary to their own authority. Defendants cite *Rose Art* for its general proposition, but omit that the *Rose Art* Court further stated that a series or line of products may have a consistent overall look despite variations in the packaging, <u>and</u> that a plaintiff may seek protection for less than an entire product line:

> In endorsing the "consistent overall look" standard, . . . **we do not require that the appearance of the series or line of products or packaging be identical.** As the District Court stated **"a party may have trade dress rights even though there are slight variations in its package design as long as the change does not alter the distinctive characteristics and the trade dress conveys a single and continuing commercial impression."**
>
> * * *
>
> [I]n seeking protection for the trade dress of a line of products, the plaintiff can define the line as it sees fit. . . . **In presenting a case for trade dress infringement, a plaintiff can group together any number of products in any way it sees fit, as long as the products have a consistent overall look.**

235 F.3d at 173 (emphasis added).

*Rose Art* advises that "when applying the 'consistent overall look' standard,' . . . a trial court should consider only the products or packaging for which the plaintiff is seeking trade dress protection." *Id*. at 175.

*Rose Art* explicitly establishes that Living Essentials was not required to include the decaffeinated version of its energy supplement in its Second Amended Complaint, and that it is not appropriate for the Court to consider products which Living Essentials has not asserted.



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

-16-

Living Essentials can and does adequately allege trade dress infringement of its original and extra strength 5 HOUR ENERGY® supplements.  Second Amended Complaint at ¶¶ 39-44. But, even if the Court were to consider all three products, even a cursory visual inspection shows that there is a common theme among them which conveys a single and continuing commercial impression and includes: (1) the terrain runner, (2) the mountain and sunrise design, (3) the shape of the bottle (short neck and container with broad shoulders), and (4) the presentation of the 5 HOUR ENERGY® trademark.  There are far more common features in the packaging of the 5 HOUR ENERGY® product line than variations.  Specifically, the size and shape of the bottles, the placement, size, and color of the product name, the mountain and sunrise artwork, and the size shape and presentation of the terrain runner are all either identical or virtually identical. The primary difference in the packaging is the variation in the color scheme.  But, such a slight variation does not preclude a finding of consistency as long as it does not alter the otherwise distinctive characteristics of the package or detract from the overall commercial impression.  *Id*. at 173 (" [A] party may have trade dress rights even though there are slight variations in its package design as long as the change does not alter the distinctive characteristics and the trade dress conveys a single and continuing commercial impression.").

Reasonable jurors could find that, notwithstanding slight variations in the color scheme, the common features of Living Essentials' 5 HOUR ENERGY packaging create a



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield,  MI 48075-1238
USA

Tel     (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

recognizable and "consistent overall look" in the 5 HOUR ENERGY® product line.[3]  Therefore, Defendants' motion for summary judgment on this ground should be denied.

**E.      Summary Judgment On Living Essentials' Trade Dress Claim Is Premature**

Defendants claim that, even if the 5 HOUR ENERGY product line is entitled to trade dress protection, their PURE ENERGY supplement does not infringe that trade dress. However, whether or not Defendants' PURE ENERGY supplement violates Living Essentials' trade dress (of either the entire line or just the original and/or extra strength supplements) is a question of fact not appropriately decided at this juncture, because Living Essentials has not had sufficient opportunity for discovery on each of the elements of its claim; namely, that Defendants' product is likely to cause confusion in the marketplace.  *See Abercrombie & Fitch*, 280 F.3d at 627 ("Summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery."); *See also* Ex. F, Fed. R. Civ. P.  56(f) Affidavit of Marc Lorelli.

With regard to confusing similarity, one critical factor the Court must consider is Defendants' intent in selecting their trade dress.  *Frische's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982) (*quoting with favor Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980)).  Indeed, "if the mark was adopted with

---

[3]  Defendants contend that the Court may decide whether Living Essentials' trade dress has a "consistent overall look" as a matter of law.  However, neither of the cases Defendants cite in support even address the issue.  *See Landscape Forms, Inc. v Columbia Cascade Co.*, 113 F.3d 373 (2nd Cir. 1997)(on appeal of preliminary injunction order, court considered whether the product design of plaintiff's line of furniture was inherently distinctive); *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604 (7th Cir. 1986)(on summary judgment, court considering protectability of single item, not product line).  Moreover, the fact that the *Walt Disney* Court only decided the issue after hearing testimony and weighing competing evidence following a bench trial suggests otherwise.  *See Walt Disney*, 830 F.Supp. at 768.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

the intent of deriving benefit from the reputation of (the plaintiff,) that fact alone may be sufficient to justify the inference that there is confusing similarity." *Id*. Therefore, discovery of Defendants is essential to Living Essentials' ability to present proof in support of its claim. Living Essentials must be afforded an opportunity to conduct discovery before the Court considers whether summary judgment is warranted. *Abercrombie & Fitch*, 280 F.3d at 627.

Lastly, selectively citing from *Abercrombie & Fitch v. American Eagle Outfitters*, *supra*, Defendants argue that the elements of Living Essentials' trade dress are so commonly associated with energy drink products in general that allowing trade dress protection would hinder competition because, in the energy drink industry, "*all* drinks may need to be associated with energy, athleticism, and bright colors." Defs. Br. at p. 15. However, when the passage Defendants cite from is read in its entirety, it is apparent that the *Abercrombie & Fitch* Court's concern stemmed from plaintiff's attempt to protect generic, functional design features of their clothing:

> **Abercrombie is not saved by its characterization of its trade dress as the combination of different design features on its clothing: denying [defendant] or other producers the right to combine. . . functional design features with their own trademarks on clothing bearing certain generic designs (unspecified "solid, plaid, and stripe designs," without more, are indisputably generic) made from generic fabrics** would undoubtedly force these competitors to spend money to design around Abercrombie's creations. There can be no dispute that preventing other producers from combining these elements in the way Abercrombie does would prevent them from competing effectively in the market for casual clothing aimed at young people.



**Brooks Kushman P.C.**
1000 Town Center, 22ᵈ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

-19-

*Abercrombie & Fitch*, 280 F.3d at 644 (emphasis added to illustrate portion of passage Defendants omitted).  To the extent Defendants, likewise, argue that Living Essentials' trade dress elements are generic and/or functional, their motion for summary judgment is premature for the reasons already stated; Living Essentials must first be afforded an opportunity to conduct discovery which will enable it to respond to Defendants' claims.  (See Ex. G.)

The Court should note, however, that Defendants' claim is once again belied by the very evidence they cite.  Specifically, Defendants provide illustrations of seven competing supplements which illustrate the myriad ways in which the concept of energy and athleticism can be conveyed without utilizing the particular combination of artwork, colors, phrases, and lettering which constitute Living Essentials' trade dress.  *(See* Defs. Exhibit 2.)

## IV.  <u>CONCLUSION</u>

Defendants' motion to dismiss and/or for summary judgment should be denied in its entirety.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

By:   /s/ Mark A. Cantor
MARK A. CANTOR  (P32661)
MARC LORELLI     (P63156)
1000 Town Center
Twenty-Second Floor
Southfield, Michigan 48075
(248) 358-4400 (tel)
(248) 358-3351 (fax)
E-mail:  mantor@brookkushman.com
          mlorelli@brookskushman.com
*Attorneys for Plaintiff*

Dated:   September 29 , 2008

**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

-20-

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on  September 29, 2008 , I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Michigan using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing: Mark A. Cantor, Peter M. Falkenstein, Jeffrey G. Heuer, Marc Lorelli, Jonathan C. Myers.  I also certify that I have mailed by United States Postal Service the paper to the following non-participants in the ECF System: None.

**BROOKS KUSHMAN P.C.**

By:      /s/  Mark A. Cantor                        
MARK A. CANTOR  (P32661)
MARC LORELLI       (P63156)
1000 Town Center
Twenty-Second Floor
Southfield, Michigan 48075
(248) 358-4400 (tel)
(248) 358-3351 (fax)
 E-mail:  mantor@brookskushman.com
         mlorelli@brookskushman.com

*Attorneys for Plaintiff*



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel     (248) 358-4400
Fax     (248) 358-3351

www.brookskushman.com

-21-