**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

INNOVATION VENTURES, LLC d/b/a
LIVING ESSENTIALS,

     Plaintiff,

v.

N2G DISTRIBUTING, INC., ALPHA
PERFORMANCE LABS, and JEFFREY
DIEHL,

     Defendants.
_____/

Case Number: 08-10983

JUDGE PAUL D. BORMAN
UNITED STATES DISTRICT COURT

## ORDER (1) GRANTING DIEHL'S MOTION TO DISMISS WITHOUT PREJUDICE; (2) DENYING N2G DISTRIBUTING, INC. AND ALPHA PERFORMANCE LABS PARTIAL MOTION TO DISMISS; AND (3) DENYING N2G DISTRIBUTING, INC. AND ALPHA PERFORMANCE LABS' MOTION FOR PARTIAL SUMMARY JUDGMENT

  Before the Court is Defendant Jeffrey Diehl's ("Diehl") motion to dismiss, filed September 2, 2008 (Doc. No. 46), and Defendants N2G Distributing and Alpha Performance Labs' ("N2G" "Alpha" collectively "Defendants") partial motion to dismiss and/or for partial summary judgment, filed August 20, 2008 (Doc. No. 43). The Court held a motion hearing on November 24, 2008. Having considered the entire record, and for the reasons that follow, the Court GRANTS Diehl's motion to dismiss without prejudice and DENIES N2G and Alpha's motion to dismiss, and for partial summary judgment.

**I. BACKGROUND**

  This lawsuit arises from Plaintiff's allegations that Defendants' "6 Hour Energy" and "Pure

1

Energy" drinks infringe upon Plaintiff's trademark, copyright and trade dress for its "5 Hour Energy" products.

Plaintiff is a Michigan limited liability company with its headquarters in Novi, Michigan. (Compl. ¶ 1). N2G Distribution is a California corporation. (Compl. ¶ 2). Alpha Performance Labs is a Nevada corporation. (Compl. ¶ 3). Diehl is the President and CEO of N2G Distributing Inc. and the principal of Alpha Performance Labs. (Second Amended Compl. ¶ 4 [hereinafter "SAC"]). Diehl resides in San Bernadino, California. (Doc. No. 46-2, Diehl Decl. ¶ 3).

Plaintiff is a national marketer and distributor of nutritional and dietary supplements. (SAC ¶ 8). This lawsuit concerns two of Plaintiff's products: 5 Hour Energy and Extra Strength 5 Hour Energy, which are 2-ounce liquid energy supplements. (SAC ¶¶ 2, 13). Plaintiff has used the 5 Hour Energy trademark since 2004, and registered it with the United States Patent and Trademark Office on September 27, 2005. (SAC ¶¶ 9-10). Plaintiff asserts that it has used the 5 Hour Energy trade dress for its 5 Hour Energy products since 2004; Extra Strength 5 Hour Energy was introduced in 2008. (SAC ¶ 13).

Defendants market and distribute competing 2-ounce liquid energy shots called 6 Hour Energy, Nitro2Go Instant Energy and Pure Energy. (SAC ¶¶6-7). Plaintiff discovered Defendants' "6 Hour Energy Shot" drink at a trade show in Nevada. (Defs.' Br. Ex. B, Henderson Decl. ¶ 15).

Thereafter, on March 7, 2008, Plaintiff filed a Complaint in this Court, alleging the following causes of action:

  Count I:  Federal Trademark Infringement & Counterfeiting (15 U.S.C. § 1114)
  Count II:  False Designation of Origin, False Sponsorship, and Trade Dress (15 U.S.C. § 1125(a)
  Count III:  Common Law Trademark Infringement.

On March 13, 2008, Plaintiff moved for a preliminary injunction, arguing that Defendants had infringed on its trademark and trade dress by copying Plaintiff's packaging design and caution statement. (Pl.'s Mot. Prelim. Injunc. ¶ 16). This Court granted Plaintiff's motion for a preliminary injunction at the motion hearing on April 7, 2008, and entered an order on April 9, 2008. (Doc. No. 23). Defendants were enjoined from "manufacturing, distributing, shipping, advertising, marketing, promoting, transferring, selling, or offering to sell Defendants' Enjoined Product during the pendency of this case." (Order Granting Prelim. Injunc., April 9, 2008). The "Enjoined Product" is 6 Hour Energy. (Id.) Defendants were further enjoined from manufacturing, marketing and distributing any product that use the 5 Hour Energy trade dress or use confusingly similar packaging during the pendency of the action, and ordered to recall the 6 Hour Energy shots out on the market. (Id.)

After the preliminary injunction issued, Plaintiff moved for leave to file an amended complaint. (Doc. No. 38). Defendants acquiesced to Plaintiff's request, and a stipulated order allowing Plaintiff to file an amended complaint was entered on August 5, 2008. (Doc. No. 42). In the second amended complaint, Plaintiff added Jeffrey Diehl as a defendant, and alleged the following new claims: copyright infringement (Count IV), inducement of trademark infringement (Count V), inducement of trade dress infringement, and contributory and/or vicarious liability for copyright infringement (Count VII).

On August 20, 2008, Defendants N2G Distributing, Inc. and Alpha Performance Labs filed the instant motion to dismiss Plaintiff's second amended complaint, or in the alternative, for summary judgment. Defendant Diehl filed his motion to dismiss on September 2, 2008. Plaintiff filed responses to the motions to dismiss on September 29, 2008.

3

## II. ANALYSIS

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). The Supreme Court held in *Bell Atlantic Corp. v. Twombly*, ___U.S. ___, 127 S. Ct. 1955, 1974 (2007), that a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted); *Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965 (citations omitted).

### A. Diehl's Motion to Dismiss

Diehl raises a jurisdictional issue in his motion to dismiss.[1] Diehl argues that this Court does not have personal jurisdiction over him because he has insufficient contacts with the forum state to subject him to either general or limited personal jurisdiction in this Court. (Diehl Mot. to Dismiss ¶ 5). In response, Plaintiffs admit that discovery is necessary to fully assess the extent of Diehl's

---

[1] If this Court concludes that it has personal jurisdiction over Diehl, Diehl joins Defendants N2G and Alpha's motion to dismiss. (Diehl's Mot. to Dismiss ¶ 6).

contacts with Michigan and, in the alternative, request that the Court deny Diehl's motion based on Diehl's admitted involvement in the infringing activities alleged. (Pl.'s Diehl. Resp. 5).

In the context of a Rule 12(b)(2) motion, a plaintiff bears the burden of establishing the existence of jurisdiction. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). When a district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988), and "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of the party seeking dismissal." *Id*. at 1459.

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction can be invoked either via general jurisdiction, where the defendant has 'continuous and systematic' contact with the forum state, *see Perkins v. Benguet Consol. Mining Co*., 342 U.S. 437, 445-47 (1952), or via limited jurisdiction, where the subject matter of the lawsuit is related to the defendant's contacts with the forum state." *Sports Authority Michigan, Inc. v. Justballs, Inc*., 97 F. Supp. 2d 806, 810 (E.D. Mich. 2000). In this case, it is undisputed that Plaintiff is asking this Court to invoke limited personal jurisdiction. Therefore, "[t]he Court must first determine "whether the exercise of limited personal jurisdiction

5

violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution." *Audi AG and Volkswagon of America, Inc. v. D'Amato*, 341 F. Supp. 2d 734, 741-742 (E.D. Mich. 2004). "If not, then whether the rule of statutory construction supports such an exercise of jurisdiction over defendants." *Id.* at 742. Because "[t]he Michigan Supreme Court has construed Michigan's Long-Arm Statute to bestow the broadest possible grant of personal jurisdiction consistent with due process," *Id.* at 741, "the two questions become one." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).

In order to comply with the Due Process Clause, Plaintiff has to establish that significant minimum contacts exist sufficient to satisfy "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 310. The Sixth Circuit has set forth three criteria that must be met before a court will exercise personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997).

Diehl contends that he has not purposefully availed himself of the privilege of conducting business in Michigan. (Diehl Br. 7). "'Purposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being 'haled before' a Michigan court." *Id.* (quoting *Jeffrey v. Rapid Am. Corp.*, 448 Mich. 178, 187 (1995)).

Plaintiff alleges that Diehl is personally liable for the trademark, trade dress and copyright infringement due to his: "(1) direct participation; (2) knowing and intentional inducement of or material contribution to the infringement; (3) vicarious liability; (4) his status as an alter ego of N2g and Alpha Labs; and/or (5) the doctrine of piercing of the corporate veil." (SAC ¶ 30). Plaintiff also argues that Diehl was "directly involved in naming 6 HOUR ENERGY and designing its packaging." (Pl.'s Diehl Resp. 13). Plaintiff infers that Diehl was directly involved from Diehl's statement that, "[w]e decided to name the new drink '6Hour Energy Shot'," and Diehl's description of how the label graphics were chosen in which he again uses the "we" pronoun. (Doc. No. 10, Diehl Aff. ¶¶ 11, 14). Plaintiff has not alleged any facts relating to its allegations that Diehl is vicariously liable, or an alter ego of the companies, or to support a piercing of the corporate veil. Diehl admits that N2G delivers products to Michigan for distribution, but denies that he, in his individual capacity, targeted advertising or marketing towards Michigan. (Diehl Decl. ¶ 8). Diehl is the chief executive of both defendant companies, but that fact does not get Plaintiff across the goalline.

Based on the facts alleged in the complaint, and Diehl's sworn statements, this Court does not have personal jurisdiction over Diehl. Plaintiff has not established that Diehl has had sufficient, purposeful minimum contacts with Michigan such that Diehl could foresee being haled before a Michigan court. *See Griepentrog,* 954 F.2d at 1176. At best, Plaintiff has established that Diehl, as a corporate executive, may have played a role in naming the product and its packaging design, actions which were undertaken as a corporate officer and not necessarily specifically intended to cause an effect in Michigan. Plaintiff admits as much in its response to Diehl's motion to dismiss.

7

(Pl.'s Diehl Resp. 8-12). Plaintiff requests that this Court deny Diehl's motion to dismiss, and allow it to conduct discovery on the personal jurisdiction issue.

Although it is within the Court's discretion to grant discovery before ruling on a 12(b)(2) motion, this Court will not exercise its discretion here because Plaintiff has proffered no facts to support this claim. *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n. 7 (6th Cir. 2005). Plaintiff has not established that Diehl has had any contacts with the forum state or adduced any evidence showing that it is probable that Diehl purposefully availed himself of the privilege of conducting business in Michigan. Accordingly, the Court dismisses Diehl as a defendant without prejudice. However, because Diehl has proffered an affidavit in this case and is the CEO of both defendant corporations, he is subject to discovery.

### B. N2G and Alpha Performance Labs' Partial Motion to Dismiss, and/or Motion for Partial Summary Judgment

N2G and Alpha Performance Labs ("Defendants") move to dismiss Plaintiff's copyright infringement and trade dress claims. (Mot. to Dismiss ¶ 5). Defendants contend that Plaintiff's medical caution statement is not entitled to copyright protection. (Mot. to Dismiss ¶¶ 6-7). Defendants further argue that Plaintiff cannot establish a trade dress claim because there is no unique, distinctive, and consistent label configuration running through the entire product line. (Mot. to Dismiss ¶ 8). Plaintiff responds that Defendants' motion to dismiss should be denied because it alleged a *prima facie* case of copyright infringement and alleged a viable claim of trade dress infringement. (Pl.'s Resp. 5, 12).

### 1. Plaintiff's Copyright Claims

In the complaint, Plaintiff alleges that its medical caution statement[2] is a work subject to protection under the Federal Copyright Act, 17 U.S.C. § 101 *et seq.* (SAC ¶ 54). Plaintiff further alleges that Defendants copied, and induced others to copy, the medical caution label without Plaintiff's permission. (SAC ¶ 56).

To establish a copyright infringement claim, a plaintiff must show: 1) ownership of a valid copyright; and 2) that the defendant copied protectable elements of the work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, (1991); *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003). The first prong tests the originality and non-functionality of the work, both of which are presumptively established by the copyright registration. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004). In this case, it is undisputed that Plaintiff possesses a registered copyright for the medical caution statement. (Pl.'s Resp. Ex C, Cert. of Registration). The second prong tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter). *Lexmark*, 387 F.3d at 534.

Defendants acknowledge that Plaintiff registered the medical caution statement with the Copyright Office (Defs.' Br. 6), an action which constitutes prima facie evidence of the copyright's validity. *See* 17 U.S.C. § 410(c). Also, Defendants do not dispute that they copied Plaintiff's medical caution statement. (Defs.' Br. 6). Indeed, a review of the pictures of the medical caution

---

[2]The medical caution statement reads: "Contains about as much caffeine as a cup of coffee. Limit caffeine products to avoid nervousness, sleeplessness, and occasionally rapid heartbeat. You may experience a Niacin Flush (hot feeling, skin redness) that lasts a few minutes. This is caused by Niacin (Vitamin B3) increasing blood flow near the skin."

statements on Plaintiff and Defendants' product contained in the complaint reveals that Defendants' medical caution statement is identical to Plaintiff's. (SAC ¶ 28). Because 5 Hour Energy was on the market before any of Defendant's products, and the medical caution statements featured on Defendants' labels are identical to Plaintiff's medical caution statement, it is reasonable to infer that Defendants copied Plaintiff's medical caution statement. *See Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) ("Since direct evidence of copying is rarely available, a plaintiff may establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue."). Because Plaintiff has plead a plausible claim of copyright infringement, this Court denies Defendant's motion to dismiss.

This Court will also examine Plaintiff's claims under Rule 56(c), and consider Defendants' arguments rebutting the presumptive validity of Plaintiff's copyright. *Lexmark*, 387 F.3d at 534 (citing *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995)). Primarily, Defendants argue that Plaintiff's medical caution statement lacks originality. (Defs.' Br. 6).

The second part of the second prong of the *Feist* test requires courts to decide whether whether the work is entitled to copyright protection as a matter of law. *See Lexmark,* 387 F.3d at 534. In order to enjoy copyright protection, the work must contain "originality." *Tiseo Architects, Inc. v. B & B Pools Service and Supply Co.*, 495 F.3d 344, 347 -348 (6th Cir. 2007). "Originality . . . means only that the work was independently created by the author (as opposed to copied from other works), and that it possess at least some minimal degree of creativity." *Feist*, 499 U.S. at 345. However, even if a work is in somewhat "original" under 17 U.S.C. § 102(a), it still may not be

copyrightable because § 102(b) provides that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of [its] form." *Lexmark*, 387 F.3d at 534. Copyright protection is bestowed not upon the idea, but the expression of the idea. *Id.*

In deciding whether a work is an idea or an expression of an idea, between process and non-functional expression, courts have looked to the two copyright doctrines of merger and scenes a faire. *Lexmark*, 387 F.3d at 535. If the "expression is essential to the statement of the idea," or where there is only one way or very few ways of expressing the idea, the idea and expression are said to have "merged." *Id.* (quoting *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 68 (2d Cir. 1994)). If the idea and expression merge, the expression is not entitled to copyright protection because granting protection to the expressive component of the work would also protect the uncopyrightable idea as well. *Id.* (citation omitted). The doctrine of "scenes a faire"[3] applies when external factors constrain the choice of expressive vehicle, i.e. if the expression is a standard phrase or stock expression, the expression is not copyrightable. *Id.*

Defendants argue that Plaintiff's medical caution statement is unoriginal because there is only one way or very few ways to express the facts contained in the medical caution statement. (Defs.' Br. 7). Defendants thus contend that the idea and expression have merged, and the medical caution statement is uncopyrightable. (Defs.' Br. 7). In so arguing, Defendants liken Plaintiff's medical caution statement to instructions, which are not entitled to copyright protection because instructions generally do not contain "'stylistic flourishes or any other forms of creative expression

---

[3]"Scènes à faire are those 'incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic.'" *Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 319 (6th Cir. 2004) (quoting *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C. Cir. 2002)).

11

that somehow transcend the functional core of the directions.'" (Defs.' Br. 7, quoting *National Nonwovens, Inc. v. Consumer Products Enterprises*, 397 F. Supp. 2d 245, 256 (D. Mass. 2005)).

In trying to discern whether the merger or "scenes a faire" doctrines apply, courts tend to "focus on whether the idea is capable of various modes of expression." *Lexmark*, 387 F.3d at 536 (quoting *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 138 (5th Cir. 1992)). In this case, there is evidence that the idea is capable of various modes of expression. Defendants attached pictures of the medical caution statements published on other energy shot labels. (Defs.' Br. Ex. 2). Although the medical caution statements are substantially similar, in that they all express the same basic facts, the statements are not identical. Indeed, the word choice and word order differs among the labels. These differences indicate that the idea and expression have not merged and that there is not a standard way of expressing the idea, such that the "scenes a faire" doctrine would apply. Moreover, the medical caution statement is unlike instructions because the medical caution statement does not merely delineate the steps of an established process. Instead, each manufacturer has chosen different language and word order to emphasize or de-emphasize various aspects of the medical warning. In other words, the medical caution statement is a narrative. Because the medical caution statements appearing on the energy shots have appreciable differences, and stylistic flourishes may be inserted in the statement, the medical caution label has the minimum level of originality necessary to warrant copyright protection as a matter of law. Accordingly, this Court denies Defendants' motion for summary judgment. *See Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411-12 (6th Cir. 2008) (internal citations omitted). ("Summary judgment is appropriate if the evidence, when viewed in the light most

favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law.")

### 2. Plaintiff's Trade Dress Claims

Defendants argue that this Court should dismiss Plaintiff's trade dress claims because Plaintiff has not stated, with specificity, the elements of the claimed trade dress. (Defs.' Br. 12). Plaintiff responds that it sufficiently pleaded its trade dress claim, and it is entitled to identify its trade dress elements post-discovery. (Pl.'s Br. 12-13).

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), protects from infringement the unregistered "trade dress" of a product. "The trade dress of a product is essentially its total image and overall appearance. It involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n. 1 (1992) (internal quotation marks and citations omitted). The elements of trade dress infringement under § 43(a), are: 1) the trade dress is distinctive in the marketplace, "thereby indicating the source of the good it dresses," 2) the trade dress is primarily nonfunctional, and 3) the trade dress of the competing good is confusingly similar. *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002).

Defendants argue that Plaintiff's trade dress claim cannot survive a motion to dismiss because Plaintiff did not list the elements of its trade dress. (Defs.' Br. 12-13). "'[I]t will not do to solely identify in litigation a combination as 'the trade dress.' Rather, the discrete elements which make up that combination should be separated out and identified in a list." *General Motors Corp.*

13

*v. Lanard Toys, Inc.*, 468 F.3d 405, 415 (6th Cir. 2006) (quoting McCarthy on Trademarks § 8:3 (4th ed. 2001)). However, at the motion to dismiss stage, Plaintiff has to do no more than state enough facts to support a plausible claim for trade dress. *See Twombly*, 127 S. Ct. at 1974. Beyond pleading facts sufficient to put Defendants on notice of the claims against them, there is no requirement that Plaintiff plead its trade dress claim with further specificity. *See Abercrombie*, 280 F.3d at 629. Here, as in *Abercrombie*, 280 F.3d at 629, Plaintiff included pictures of its products and Defendants allegedly infringing products. (SAC ¶ 39). If this case proceeds further, Plaintiff will be expected to list the elements of the designs and the unique combinations it seeks to protect. *See Abercrombie*, 280 F.3d at 629. However, at the motion to dismiss stage, there is no such requirement. As such, Defendants argument fails, and this Court denies Defendants' motion to dismiss Plaintiff's trade dress claims.

Defendants next argue that this Court that they are entitled to summary judgment on Plaintiff's trade dress claims because Plaintiff has not demonstrated that its series or line of products has a recognizable and consistent overall look. (Defs.' Br. 13). Defendants point to the fact that Plaintiff did not include the decaffeinated version of its 5 Hour Energy drink, which has a blue and green label, a sun, and a runner silhouette, to illustrate its argument that Plaintiff's 5 Hour Energy Product line does not have recognizable and consistent overall look. (Defs.' Br. 14). Plaintiff responds that the Court should only consider the products for which it seeks trade dress protection, and the slight variation in the labels does not affect the overall consistent look of the products. (Pl.'s Br. 16-17). Plaintiffs further argue that summary judgment is premature because it has not had sufficient opportunity to conduct discovery on whether Defendants' products are likely to cause confusion in the marketplace. (Pl.'s Br. 18).

Courts that have decided the issue of whether all, or part of a product line should be considered in deciding whether a product has a recognizable and consistent overall look, have held that a plaintiff asserting a trade dress claim may choose the products the court examines when deciding a trade dress claim. In *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 172-75 (3d Cir. 2000), the Third Circuit opined:

> We agree with the District Court that "if a plaintiff seeking trade dress protection cannot show that its packages have a 'consistent overall look,' the trade dress that the defendant is allegedly infringing 'does not exist,' " and the defendant must prevail. . . .
>
> In endorsing the "consistent overall look" standard, however, we do not require that the appearance of the series or line of products or packaging be identical. . . . Certainly the fact that Rose Art packages the same product in several different types of packaging does not prevent Rose Art from seeking trade dress protection for one of these packaging designs. . . .
>
> Even if Rose Art distributed the same products, for example, generic crayons, markers, and colored pencils in fifteen different package designs for each of fifteen different customers, this fact alone would not prevent Rose Art from obtaining trade dress protection for one of the fifteen different packaging styles. One or more of the package designs could be recognizable trade dress as long as it had a "consistent overall look."
>
> ***
>
> We conclude that when applying the "consistent overall look" standard, that is, when determining whether the trade dress alleged by the plaintiff is recognizable, protectable trade dress, a trial court should consider only the products or packaging for which the plaintiff is seeking trade dress protection.

The Seventh Circuit has since adopted the *Rose Art* consistent overall look standard. *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 814 (7th Cir. 2002).

Defendants' argument fails under *Rose Art* because the Court does not have to consider all of Plaintiff's products in deciding whether the line has a consistent overall look. Rather, this Court will only consider the products and packaging for which Plaintiff is seeking trade dress protection.

15

*Rose Art*, 235 F.3d at 175. For this reason, the Court denies Defendants' motion for summary judgment on Plaintiffs' trade dress claims.

### III. CONCLUSION

For the reasons discussed above, this Court:

1) GRANTS Diehl's motion to dismiss for lack of personal jurisdiction, and dismisses Diehl as a defendant without prejudice;

2) DENIES Defendants' motion to dismiss Plaintiff's copyright claims;

3) DENIES Defendants' summary judgment motion on Plaintiff's copyright claims;

4) DENIES Defendants' motion to dismiss Plaintiff's trade dress claims;

5) DENIES Defendants' summary judgment motion on Plaintiff's trade dress claims.

SO ORDERED.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: December 2, 2008

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 2, 2008.

s/Denise Goodine
Case Manager