## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**INNOVATION VENTURES, LLC**
**d/b/a LIVING ESSENTIALS,**
a Michigan limited liability company,

       *Plaintiff,*

vs.

**N2G DISTRIBUTING, INC.,**
a California corporation,
**ALPHA PERFORMANCE LABS**
a Nevada Corporation,

       *Defendants.*

HONORABLE PAUL D. BORMAN

CIVIL ACTION NO.  **2:08-cv-10983**

---

## FINAL JURY INSTRUCTIONS

## TABLE OF CONTENTS

1.0    Trademark Infringement – Nature of Claim ...............................................2

1.1    Trademark Infringement – Likelihood of Confusion..............................................3

1.2    Trademark Infringement – Fair Use .............................................6

2.0    Trade Dress Infringement – Nature of Claim .............................................7

2.1    Trade Dress - Protectibility Generally .............................................8

2.2    Distinctiveness .............................................9

2.3    Inherent Distinctiveness.............................................10

2.4    Acquired Distinctiveness - Secondary Meaning.............................................11

2.7    Trade Dress Infringement - Elements .............................................12

2.8    Trade Dress Infringement – Likelihood of Confusion.............................................13

3.0    Intentional Infringement – Trademark and Trade Dress.............................................14

4.0    False Advertising – Elements .............................................15

5.0    Trademark / Trade Dress / False Advertising Damages –
        General.............................................16

5.1    Trademark / Trade Dress / False Advertising Damages --
        Plaintiff's Actual Damages.............................................17

6.0    Copyright .............................................18

6.1    Copyright Damages – Defendants' Profits .............................................19

## 1.0 TRADEMARK INFRINGEMENT – NATURE OF CLAIM

Living Essentials claims that N2G has infringed Living Essentials' 5-hour ENERGY trademark.

A trademark, also called a "mark", is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product.  Living Essentials owns the trademark for the name and/or phrase "5-hour ENERGY."

A valid trademark is a name that is "distinctive," which means that the name is capable of distinguishing Plaintiff's product from the products of others.  5-hour ENERGY is a distinctive name, is a valid trademark, and is entitled to protection.

The purpose of trademark law is to prevent confusion among customers about the source, affiliation or sponsorship of products and to permit trademark owners to show ownership of their products and control their product's reputation.

In an action for infringement, the owner of a valid mark may enforce the right to prevent others from using the same or a similar mark that is likely to cause confusion in the marketplace. Anyone who, without the consent of the owner of a valid mark, uses the same or a similar mark in connection with the sale or offering for sale of goods or services in a manner likely to cause confusion among consumers as to the source, affiliation, or sponsorship of goods or services, infringes the mark.

## 1.1 TRADEMARK INFRINGEMENT – LIKELIHOOD OF CONFUSION

To prove infringement of the 5-hour Energy trademark, Living Essentials must prove by a preponderance of the evidence that the names of the N2G products are likely to cause confusion with the 5-hour Energy trademark. Preponderance of the evidence means a fact is proven if the evidence persuades you that the fact is more probably true than not true.

It is not necessary that the mark used by the defendant be an exact copy of the plaintiff's mark.  Rather, the plaintiff must demonstrate that, when viewed in its entirety, the defendant's use of his mark is likely to cause confusion in the minds of reasonably prudent purchasers or other relevant members of the public, as to the source, origin, sponsorship, approval or affiliation of the products in question.

In evaluating whether or not there is a likelihood of confusion, you are to consider various factors, including those that I will discuss momentarily. These factors are simply a guide to help you determine whether confusion is likely to result from simultaneous use of the two parties' marks.  No single factor or consideration is dispositive, and plaintiff need not prove that all, or even most, of the factors listed below are present in any particular case to be successful.  For example, if you find that the marks of both the Plaintiff and Defendant are similar and they are used on the same goods, then you may find that there is a likelihood of confusion.  Nor are you limited to consideration of only these factors.  You must consider and weigh all of the relevant evidence in determining whether there is a likelihood of confusion.  Factors you may consider include:

- **Strength of the 5-Hour Energy Trademark**:  The more the consuming public recognizes the plaintiff's trademark as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the defendant's goods if the defendant uses a similar mark.  Strength of the mark can be shown by either its inherent strength (how

distinctive or unique it is) or by its acquired strength (the degree of consumer recognition in the marketplace).   Extensive use in sales and advertising increases the acquired strength of the mark.   Significant third-party use of a trademark in the marketplace may lessen the acquired strength of the mark. Conversely, third-party copying of a trademark illustrates that the trademark is strong.

- **The Relatedness of the Goods:**  If both parties use their marks to market the same, related, or complementary types of products or services, then the likelihood of confusion increases.  If the goods are unrelated, then the likelihood of confusion decreases.

- **Similarity of the Marks**: In evaluating the similarity or dissimilarity of the respective marks, each mark must be considered as a whole. Likelihood of confusion cannot be based on dissection of a mark, that is, on only part of a mark. Although there is nothing improper in giving more or less weight to a particular feature of a mark, the ultimate conclusion as to the similarity or dissimilarity of the marks must rest on consideration of the marks in their entireties. For this factor, you should consider the overall impression created by the marks, keeping in mind all the things that the general buying public will likely perceive and remember about the marks, including their similarities in sight, sound, and meaning, as well as designs, fonts, colors, and other elements.  In analyzing similarity of the marks, a side-by-side comparison is not appropriate.  You must determine whether a given mark would confuse the public when viewed alone.  Similarity is measured by a consumer with a general, vague or even hazy impression or recollection of the 5-Hour Energy trademark.

- **Defendants' Intent:**  Proof of intent to confuse or deceive consumers by adopting and using a mark that is the same or similar to Living Essentials' trademark is not necessary to establish a likelihood of confusion, but may be a relevant factor in determining whether or not confusion

is likely.   If defendant intended to cause confusion, it may be more likely that confusion will occur. A lack of such intent does not decrease the likelihood of confusion.

- **Likely Degree of Purchaser Care:**   More sophisticated buyers, or purchasers of more sophisticated products, are likely to be more careful and discriminating when purchasing those products or services.  Conversely, if the potential buyers of the products in question are less sophisticated, or if the products in question are commodity items, the likelihood of confusion may increase because such purchasers are more likely to be confused.   For example, if the goods are inexpensive or impulse purchases, the likelihood of confusion increases.

- **Marketing Channels Used:** If the parties' respective products are likely to be sold in the same or similar channels of trade, or to the same of similar classes of customers, or advertised in similar media, this may increase the likelihood of confusion. Conversely, if the parties' respective products are likely to be sold in different outlets, or to different classes of customers, or advertised in different media, this may reduce any likelihood of confusion.

- **Actual Confusion:** Actual confusion is not required for you to find a likelihood of confusion. Actual confusion can be shown through statements by consumers or consumer surveys. However, if defendant's use of his mark has led to instances of actual confusion among relevant consumers, this may be a strong indication that confusion is likely.

## 1.2 TRADEMARK INFRINGEMENT – FAIR USE

In defense against Living Essentials' claims for trademark infringement, N2G claims that their use of the terms and/or words in question is a fair use.  The plaintiff cannot prevent the defendants from making a fair use of those terms or words to accurately describe N2G's products.  The burden is on the defendants to establish a fair use by a preponderance of the evidence.  This defense is available only if:

(1)     N2G's use accurately describes N2G's products;

(2)     N2G's use was made fairly and in good faith only to describe N2G's products;

(3)     N2G did not use them as trademarks.

It is not a fair use, and it is also not a justification for infringement, to point to third-parties that may be using the same or similar marks in the marketplace.

## 2.0 TRADE DRESS INFRINGEMENT – NATURE OF CLAIM

The term "trade dress" refers to the overall image of a product including its packaging, product label, product design, or a combination of these things.  It includes features such as size, shape, color or color combinations, texture, graphics, designs, and placement of works and decorations on a product or its packaging.

Trade dress is the non-functional physical detail and design of a product or its packaging, indicating the product's source and distinguishing it from the products of others.

The purpose of trade dress law is to prevent confusion among customers about the source, affiliation or sponsorship of products and to permit trade dress owners to show ownership of their products and control their product's reputation.

In this case, you have heard evidence about the manner in which Living Essentials' 5–hour Energy shot was packaged.  Trade dress law protects the owner of a distinctive trade dress from others using the same or a similar presentation of another product.

## 2.1 TRADE DRESS - PROTECTIBILITY GENERALLY

Only protectable trade dress can be infringed.  Accordingly, the first step in considering Living Essentials' claim that N2G infringed Living Essentials' trade dress is to determine whether or not plaintiff's trade dress is protectable.

You must find that the Living Essentials' trade dress is protectable if Living Essentials proves, by a preponderance of the evidence that the trade dress:

1.  has been used in commerce;

2.  is distinctive; and

3.  is non-functional.

There is no dispute that Living Essentials' trade dress has been used in commerce and is non-functional.

## 2.2  DISTINCTIVENESS

Only distinctive trade dress is protectable. You should find that the trade dress at issue in this case is distinctive if you find that it either (1) is inherently distinctive or (2) has acquired secondary meaning in the marketplace.

## 2.3  INHERENT DISTINCTIVENESS

Trade dress is considered inherently distinctive if its intrinsic nature serves to identify the source of the product, so that a buyer may immediately rely upon the trade dress in differentiating the product from those of other manufacturers.

In assessing this issue, you may consider, among other factors: whether the design of the trade dress is a "common" basic shape, whether it is unique or unusual in a particular field, whether it is a mere refinement of a commonly adopted and well-known form of ornamentation for a particular type of goods, and whether it is capable of creating a commercial impression distinct from the accompanying words.

## 2.4  ACQUIRED DISTINCTIVENESS—SECONDARY MEANING

Trade dress is also distinctive if it has acquired secondary meaning. Secondary meaning distinguishes the goods it represents from similar goods offered by others and refers to the ability of trade dress to relay to the public that the product or service comes from a particular source. Trade dress acquires secondary meaning when it has been used in such a way that its primary significance in the minds of prospective purchasers is not the product itself but the identification of the product with a particular source.

In addition to your common sense and common experience as citizens in the community, you may also consider the following factors in determining whether a particular trade dress has acquired secondary meaning:

1.  The length and manner of its use;

2.  The nature and extent of advertising and promotion of the mark;

3.  The amount of sales and number of customers;

4.  The efforts made in promoting a conscious connection, in the public's mind, between the trade dress and the particular product.

5.   Evidence of whether others have attempted to copy the trade dress, because the only purpose for copying another product's trade dress is to benefit from the secondary meaning that the copied trade dress enjoys.

6.  Whether the product having the trade dress has an established place in the market.

## 2.5  TRADE DRESS INFRINGEMENT - ELEMENTS

To prevail on its claim of trade dress infringement, Living Essentials must establish by a preponderance of the evidence the following two elements:

1.      Protectability: The public must recognize the plaintiff's trade dress as identifying Living Essentials' products and distinguishing them from those of others. I have previously instructed you in more detail regarding the factors you should consider in determining the issue of protectability.

2.      Likelihood of Confusion: N2G's trade dress must be likely to cause confusion in the marketplace between Living Essentials' products and N2G's products. I will now instruct you in more detail regarding the factors you should consider in determining the issue of likelihood of confusion.

## 2.6 TRADE DRESS INFRINGEMENT – LIKELIHOOD OF CONFUSION

To prove infringement of the 5-hour Energy trade dress, Living Essentials must prove by a preponderance of the evidence that: (1) N2G's product label on its 6 Hour ENERGY products, and/or (2) N2G's product label on its PURE ENERGY products, is likely to cause confusion with Living Essentials' 5-hour Energy trade dress.

You must decide whether there is a likelihood of confusion resulting from the total image and impression created by N2G's trade dress in the eye and mind of the ordinary purchaser of energy shots. That is, does N2G's use of its trade dress, when viewed in its entirety, likely to cause confusion in the minds of reasonably prudent purchasers or other relevant members of the public, as to the source, origin, sponsorship, approval or affiliation of the product in question.

In making this determination, you may rely on the general knowledge you have acquired throughout your lifetimes, including your common experience as citizens of the community. The standards and considerations for a likelihood of confusion of trade dress are similar to those for a trademark.  I will only highlight those considerations for you here, for further details please refer to the previous instruction 1.1 TRADEMARK INFRINGEMENT.

- Strength of the 5-Hour Energy Trade Dress

- The Relatedness of the Goods

- Similarity of the Marks

- Defendants' Intent

- Likely Degree of Purchaser Care

- Marketing Channels Used

- Actual Confusion

### 3.0 INTENTIONAL INFRINGEMENT – TRADEMARK AND TRADE DRESS

If you find that N2G infringed plaintiff's trademark or trade dress, you must also determine whether defendant intentionally or willfully used the trademark or trade dress to trade on the goodwill and/or reputation of plaintiff.

N2G claims that he was relying on advice from his attorney to support his allegation that infringement was not willful on the "Pure Energy" product.  Following advice of counsel in good faith, if proven by a preponderance of the evidence, is inconsistent with willfulness.  Good faith includes, prior to committing infringement, consulting with an attorney whom the defendant reasonably considered competent, making a full and accurate report to the attorney of all the material facts of which the defendant was aware, and then acting in accordance with the advice or opinion given by that attorney.

## 4.0 FALSE ADVERTISING – ELEMENTS

Living Essentials claims that N2G engaged in false advertising.  To succeed on this claim, Living Essentials must prove the following elements by a preponderance of the evidence:

1) N2G made a false statement of fact concerning the quality or characteristics of its own product;

2) the statement actually or tends to deceive a substantial portion of the intended audience;

3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions;

4) the advertisements were introduced into interstate commerce; and

5) there is some causal link between the challenged statement and harm to the plaintiff.

If you find that Living Essentials has proved that N2G's statements are false as opposed to misleading, then it is presumed that element (2) has also been established by Living Essentials.  In the case of false advertising, Living Essentials need not prove element (2).

If you find that Living Essentials has proved each of these things, then you must find for Living Essentials.  If, on the other hand, you find that Living Essentials has failed to prove any one of these things, then you must find for N2G.

**5.0 TRADEMARK / TRADE DRESS / FALSE ADVERTISING DAMAGES—GENERAL**

If successful, a plaintiff in a trademark, trade dress or false advertising action may recover any damages sustained and may also recover defendant's profits resulting from the infringement.  In this case, Living Essentials is seeking only the defendants' profits resulting from the infringement.

### 5.1 TRADEMARK / TRADE DRESS / FALSE ADVERTISING DAMAGES — DEFENDANT'S PROFITS

If you find for Living Essentials on its trademark claim, trade dress claim or false advertising claim, Living Essentials is entitled to any profits earned by N2G that are attributable to the infringement, which Living Essentials must prove by a preponderance of the evidence.  Profit is determined by deducting all expenses from gross revenue.

In determining the amount of N2G's profits to be awarded, Living Essentials has the initial burden of proving, by a preponderance of the evidence, N2G's gross sales revenue resulting from the infringement. Gross revenue is all of N2G's receipts from using the trademark, trade dress or false advertising in the sale of energy shots.

N2G then has the burden of proving, by a preponderance of the evidence, the amount of expenses that should be deducted from gross sales revenue to determine profit, and any portion of his profit he alleges is attributable to factors other than use of the infringing trademark.  Expenses are all production costs incurred in producing the gross revenue.

Unless you find that N2G has proved that a portion of the profit from the sale of the products using the trademark, trade dress or false advertising is attributable to factors other than the infringement, you shall find that the total profit is attributable to the infringement.  Also, if there is any uncertainly as to the profit earned by the infringement, that uncertainty is construed against the alleged infringer.

## 6.0 COPYRIGHT

To establish a copyright infringement claim, Living Essential must show: (1) ownership of a valid copyright, and (2) that N2G copied protected elements of the work.  Living Essentials owns a valid copyright in its Medical Caution Statement and N2G has infringed Living Essentials' Medical Caution Statement in its "Instant Energy," "6 Hour Energy," and "Pure Energy Products" for a period of time.

It is your job to determine the amount of damages, if any, to award Living Essentials' attributable to copyright infringement by N2G.  Living Essentials may recover for any actual losses suffered attributable to the infringement, plus any profits that N2G made as a result of the infringement.  In this case, Living Essentials is seeking the profits that N2G made as a result of the infringement.

## 6.1 COPYRIGHT DAMAGES – DEFENDANTS' PROFITS

Living Essentials is entitled to N2G's profits that are attributable to the infringement. If defendant's profits have been accounted for in the award of actual damages, to avoid double recovery a separate award of defendant's profits should not be made.

In establishing the amount of N2G's profits, Living Essentials is required to present proof only of N2G's gross revenue and that there is some reasonable relationship, either direct or indirect, between those revenues and the infringement. Once these two elements are established, the burden of proof then shifts to N2G to reduce this amount. N2G must then prove, by a preponderance of evidence, the amount of his deductible expenses, and other elements of profit attributable to factors other than the infringement.

In other words, you are to calculate the profits attributable to the infringement, if you find any, as N2G's gross revenues proven by Living Essentials, less the costs and other elements that N2G proves are related to factors other than infringement. Such costs and other deductible amounts may include, for example, a reasonable portion of overhead expenses such as rent, marketing, and other business costs that are related to the production of the infringing product.

However, if you find that N2G willfully infringed Living Essentials' copyright, you may find N2G's entire profits on the products bearing the infringing copyright are attributable to the infringement.

The Court will provide you with a special verdict form to help you with these decisions.